# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | |
|---|---|
| **OAKWORTH CAPITAL BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **No. 3:23-cv-01144** |
| | ) |
| **6101 SLIGO, LLC and** | ) |
| **TIMOTHY J. MORRIS,** | ) |
| | ) |
| **Defendants.** | ) |

## DECLARATION OF GREER REDDEN

Pursuant to 28 U.S.C. § 1746, the undersigned, Greer Redden, declares under penalty of perjury that the following is true and correct:

1. My name is Greer Redden. I am over the age of 18 years and am competent to testify to the matters stated herein. I am currently employed as a Managing Director of Oakworth Capital Bank ("Oakworth"), an Alabama state chartered bank. I make this Declaration based upon my own personal knowledge and upon my review of Oakworth's business records related to this matter.

2. In connection with my duties, I have gained personal knowledge of and understand the manner in which Oakworth conducts business with regard to the making, servicing and collection of loans and the manner in which records relating to the loans being serviced were and are kept by Oakworth.

3. I am one of the persons who has access to Oakworth's business records concerning financing extended by Oakworth to Defendant 6101 Sligo, LLC ("Sligo"). These records were made at or near the time of the event, recorded by a person with knowledge of the event and charged with the responsibility for recording such events. These records are kept in the ordinary

**Ex. 1**

course of Oakworth's regularly conducted business activity, which is Oakworth's customary practice. I have reviewed Oakworth's file on this matter, which leads me to the statements which are set forth below. All facts set forth herein are either (a) facts of which I have personal knowledge or (b) an accurate summary of Oakworth's business records as set forth above.

4.     As part of my duties for Oakworth, I am someone who is responsible for reviewing the loan that Oakworth made to Sligo. There are several documents which relate to and memorialize the lending relationship between Oakworth and Sligo.

5.     On or about January 31, 2022, Sligo and Oakworth entered into a term loan ("Loan"), as evidenced by that certain Promissory Note, payable to the order of Oakworth, in the original principal amount of Four Million Nine Hundred Thousand and 00/100 Dollars ($4,900,000.00). The Loan was modified, amended, and restated by that certain Amended and Restated Promissory Note, dated May 26, 2022, executed by Sligo and payable to the order of Plaintiff, in the original principal amount of Five Million Three Hundred Thousand and 00/100 Dollars ($5,300,000.00); further modified, amended and restated by that certain Second Amended and Restated Promissory Note, dated March 16, 2023, executed by Sligo and payable to the order of Plaintiff, in the original principal amount of Five Million Three Hundred Thousand and 00/100 Dollars ($5,300,000.00); and further modified, amended and restated by that certain Third Amended and Restated Promissory Note, dated May 1, 2023, executed by Sligo and payable to the order of Plaintiff, in the original principal amount of Five Million Three Hundred Thousand and 00/100 Dollars ($5,300,000.00) (collectively, the "Note"). A true and correct copy of the Note is attached hereto as Exhibit A.

6.     Oakworth is the holder and payee of the Note.

7.     To induce Oakworth to extend the term loan under the Note, on January 31, 2022, Defendant Timothy Morris ("Mr. Morris") executed a Continuing Guaranty of all present and future indebtedness and obligations of Sligo LLC arising out of the Loan from Oakworth, and executed separate Reaffirmations of Continuing Guaranty, dated May 26, 2022, March 16, 2023 and May 1, 2023 (collectively, the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as <u>Exhibit B</u>.

8.     Under the terms of the Note, Sligo defaulted, *inter alia*, by failing to make payments on the indebtedness as and when due and by failing to pay the Note in full at maturity. In addition to the outstanding balance and accrued interest, the Note and Guaranty allow for recovery of Oakworth's attorneys' fees in the event of default thereunder.

9.     The Note matured on January 31, 2023.

10.    Upon maturity, the entire sum owed thereunder became due and owing.

11.    Sligo and Mr. Morris failed to pay the Note upon maturity.

12.    Oakworth maintains a computerized account record for each loan and note for which Oakworth is the holder. These account records contain data and information concerning the terms of the loan, such as beginning balance and applicable interest rates, and records of transactions affecting the loan, such as note payments and any credits given to the amount due under the loan. The computerized account records further automatically calculate interest and loan balances based upon the information entered into the account records. These account records are the records upon which Oakworth relies in conducting its business with regard to its accounts, including without limitation determining the balances owed thereon.

13.    Oakworth's above-described computerized account records are created at or near the time the applicable loan is made or the note is delivered to Oakworth, and the entries of data

and information relating to transactions affecting the loan are made at or near the time of the transactions. The entries of data and information entered into the computerized account records are made by persons with knowledge of the information therein or made from information transmitted by a person with knowledge of the information therein. The data and information is entered into the system pursuant to procedures and safeguards established by the bank to ensure the accuracy of the information. These account records are kept in the course of Oakworth's regularly conducted business of making and servicing loans, and it is Oakworth's regular practice to create, maintain and use those records in connection with its lending and loan-servicing business.

14. Attached hereto as <u>Exhibit C</u> is a true and correct copy of a Payoff Letter produced by Oakworth in support of its claim for damages. The Payoff Letter complies with the above-described record keeping practices of Oakworth and accurately states the principal and other amounts due and owing under the Note.

15. The Payoff Letter accounts for all payments Defendants made under the Note.

16. As reflected in the Payoff Letter, the indebtedness due under the Note as of December 8, 2023 is $5,660,317.90, which amount consists of unpaid principal in the amount of $5,334,821.62, accrued and unpaid interest through December 8, 2023 of $323,496.30, and other charges of $1,999.98 (this amount excludes attorney fees and expenses).

FURTHER THIS DECLARANT SAYS NOT.

GREER REDDEN

DATE: December 8, 2023

# PROMISSORY NOTE
## (Term Loan)

$4,900,000.00

Nashville, Tennessee
January 31, 2022

1.  <u>Promise to Pay</u>. **FOR VALUE RECEIVED, 6101 SLIGO, LLC,** a Delaware limited liability company ("***Borrower***"), promises to pay to the order of **OAKWORTH CAPITAL BANK,** an Alabama banking corporation ("***Lender***"; Lender and any subsequent holders hereof being referred to collectively and separately as "***Holder***"), at the office of Holder at 5511 Virginia Way, Suite 110, Brentwood, Tennessee 37027, or at such other places as Holder shall designate in writing, advances up to the original principal sum of **FOUR MILLION NINE HUNDRED THOUSAND AND NO/100 DOLLARS ($4,900,000.00),** or, if different, the principal balance outstanding hereunder together with interest on the outstanding principal balance at the rate(s) and in accordance with the terms set forth below. All payments under this Promissory Note (this "***Note***") must be made in collected funds with lawful money of the United States of America at Lender's main office or at such other location as Holder hereof directs in writing.

2.  <u>Interest</u>.

    a.  Interest shall accrue on the unpaid principal balance of this Note at that rate of interest which is the Index, as defined herein, plus three-quarters percent (0.75%) (the "***Interest Rate***") per annum and as adjusted from time to time; *provided*, *however*, in no event shall the interest rate be less than four percent (4.0%). Interest shall be calculated on the basis of a 360 day year for actual days elapsed. The Index is currently 3.25% per annum resulting in an initial Interest Rate of 4.0% per annum. The Index is defined to mean the Prime Rate of interest published from time to time by The Wall Street Journal as such rate and shall be computed on the daily outstanding principal balance of the Indebtedness evidenced hereby (such rate, the "***Index***"). In the event The Wall Street Journal publishes more than one Prime Rate of interest, the Index is defined to mean the higher Prime Rate of interest published from time to time by The Wall Street Journal as such rate. If at any time or from time to time the Index increases or decreases, then the rate of interest hereunder shall be correspondingly increased or decreased, effective on the date any such increase or decrease is published or announced. In the event that The Wall Street Journal, during the term hereof, shall abolish or abandon the practice of publishing a Prime Rate, or should the same become unascertainable, the Holder shall designate a comparable reference rate which shall be deemed to be the Index for purposes hereof.

    b.  Beginning on the Maturity Date, or from the date of the occurrence of any Event of Default, Lender shall be entitled to charge and Borrower shall pay interest at the lesser of (i) the Interest Rate plus eight percent (8.0%), or (ii) maximum rate of interest which may be charged on the date hereof or on the date of default or on the Maturity Date, whichever is greater (the "***Default Rate***"). At Lender's option, the Default Rate shall be computed from the occurrence of Maturity Date or an Event of Default until the earlier of the date upon which the Event of Default is cured or the date upon which the Indebtedness is paid in full.

    c.  Notwithstanding anything to the contrary contained herein, the effective rate of interest on the Indebtedness evidenced by this Note shall not exceed the lawful maximum rate of interest permitted to be accrued or collected. Without limiting the generality of the foregoing, in the event the interest accrued or collected hereunder results in an effective rate of interest higher than that lawfully permitted to be accrued or collected, then such Interest Rate shall be reduced to the lawful maximum Interest Rate permitted to be accrued or collected by applicable law, and any amount previously paid or paid in the future which would exceed the highest lawful rate shall be applied to a reduction of principal (without premium or penalty) and not to the payment of interest.

d.      If for any reason the accrual of interest on this Note at the Interest Rate is voided by a court of competent jurisdiction, or if for any reason such court finds that the Interest Rate is different from the rate designated by the Holder, then this Note shall be deemed to have accrued interest from the date of execution at the highest rate permitted by law.

3.      <u>Repayment Terms</u>.

a.      This Note establishes a term loan to be used by Borrower in accordance with the terms of that certain Loan Agreement between Borrower and Lender dated as of even date herewith, (as amended, restated, supplemented or otherwise modified from time to time, the "***Loan Agreement***"; capitalized terms which are undefined herein shall have the meanings given to such terms in the Loan Agreement). Commencing on the 28th day of February, 2022 and continuing on the last day of each month thereafter until the Maturity Date, the accrued interest shall be payable in consecutive monthly installments, based on the outstanding principal balance of the Loan. All principal and any unpaid accrued interest shall be payable in full on earlier of (i) the 31st  day of January, 2023 (the "***Maturity Date***") or (ii) upon acceleration by Lender based on the occurrence of one or more Events of Default ("***Acceleration***"). In addition, all other outstanding expenses and amounts owing hereunder or under any Loan Document (as defined in the Loan Agreement) shall be due and payable in full at the Maturity Date. Borrower hereby expressly requests that any and all payments of accrued interest during the term of this Note shall be direct debited from Borrower's demand deposit account held with Lender, as follows: Routing No. 062006709; Account No. 50020635.

b.      If any payment received by Lender under this Note or other Loan Documents is rescinded, avoided, or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

c.      Payments received after 2:00 p.m. CST on a Business Day of Lender or such other cut-off times established from time to time by Lender or on weekends or bank holidays will be credited as of the next Business Day of Lender. If any payment is to be made on a day which is not a Business Day, payment shall instead be made on the following Business Day.

d.      All payments by Borrower in respect of principal of the Loan shall include payment of accrued and unpaid interest on the principal amount being repaid or prepaid, and all such payments (and, in any event, any payments in respect of the Loan on a date when interest is due and payable with respect thereto) shall be applied to the payment of accrued and unpaid interest before application to principal of the Loan.

e.      Borrower shall pay to Lender a late charge equal to the greater of $250.00 or five percent (5.0%) of any regularly scheduled monthly installment payment (and specifically excluding amounts due on the Maturity Date or upon Acceleration), including any interest, not paid within ten (10) days of the due date of such amount, not as a penalty, but as compensation to the Lender for the cost of collecting and processing such late payment. Borrower agrees that such late charge represents a good faith reasonable estimate of the probable cost to Lender of such delinquency. Lender shall have no obligation to accept any late payment not accompanied by said late charge, but if Lender does so, Lender shall not thereby waive its right to the late charge. Such late charge shall be in addition to, and not in lieu of, any other right or remedy Lender may have, including the right to receive principal and interest and to reimbursement of costs and expenses.

f.      Borrower may prepay the outstanding principal of this Note, or any part thereof, from time to time without penalty, upon not less than five (5) Business Days prior written or telephonic notice (if

3

telephonic, confirmed in writing) given to Lender by 11:00 a.m. CST, on the date required. Any notice of prepayment given to Lender shall be irrevocable once given. Upon the giving of any such notice, the amount of the outstanding principal balance of the Loan specified to be prepaid in such notice, together with all accrued and unpaid interest thereon, shall be due and payable in full on the prepayment date specified therein. Any amounts so prepaid on the Loan may not be re-borrowed.

4.    <u>Collateral</u>. This Note is secured by certain collateral (the "***Collateral***") described in the Loan Agreement, to which Loan Agreement reference is hereby made for a description of rights of Lender of this Note upon the occurrence of any Event of Default.

5.    <u>Guaranty</u>. As consideration for this Note, Timothy Morris (the "***Guarantor***") executed a Continuing Guaranty, of even date herewith (individually and together, the "***Guaranty***") to which Guaranty reference is hereby made for a description of the rights of the Holder of this Note in the event of default. Borrower acknowledges and agrees that, as an inducement for Lender to provide financing in connection with this Note (and the Loan Documents), any future subsidiary shall promptly execute a guaranty agreement in form and substance as requested by Lender, to guarantee the payment of this Note and the Loan Documents.

6.    <u>Events of Default</u>. This Note shall be in default upon the occurrence of any of the following events (each, an "***Event of Default***"):

a.    Failure to pay the Indebtedness, or any part thereof, when and as the same shall become due and payable; or

b.    If any warranty, covenant, representation, agreement or statement made, furnished or contained in this Note, the Deed of Trust or in any other Loan Document, or in any other instrument, transfer, assignment, document or loan agreement given with respect to the Indebtedness, be untrue or misleading in any material respect when made; or

c.    The nonperformance, nonobservance, breach or failure to execute in every particular the covenants, agreements, promises, obligations, warranties and conditions set out in this Note or in any Loan Document, or in any other instrument given with respect to the Indebtedness; or

d.    The occurrence of an event of default or the material nonperformance, nonobservance, default, breach or failure to timely comply, perform, observe, deliver, furnish, or execute in every particular the terms, covenants, agreements, promises, obligations, warranties and conditions set out in any other note, document, instrument or agreement between Borrower and Lender with respect to any other indebtedness of Borrower or owed to Lender, and such default is not cured within any applicable cure period; or

e.    The filing by or against Borrower or any maker or endorser of the Indebtedness of a voluntary or involuntary petition in bankruptcy; or any Borrower's, maker's or endorser's adjudication as a bankrupt or insolvent, which is not cured within ninety (90) days; or the filing by Borrower, maker, endorser of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for it under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency, receivership or other relief for debtors, which is not dismissed within ninety (90) days; or Borrower's, maker's, or endorser's seeking or consenting to or acquiescing in the appointment of any trustee, receiver, liquidator or examiner of Borrower, maker or endorser of all or any part of the collateral secured to Lender, including, but not limited to, rents, issues, profits or revenues thereof; or the making by Borrower, maker or endorser of any general assignment for the benefit of creditors; or the admission in writing by Borrower, maker or endorser of its inability to pay its debts generally as they become

4

due; or the commission by Borrower, maker or endorser of an act of bankruptcy; or the dissolution or termination of existence of Borrower, maker or endorser; or

f.       The occurrence of any cessation of a material part of Borrower's business; or any consolidation, reorganization, restructure, dissolution, or of any part of its business; liquidation or any revocation or any termination of existence which is not cured within sixty (60) days after such event (regardless of whether election to continue is made); or any expiration, revocation or other termination of its charter, operating agreement, organizational agreement, certificate of authority, good standing, or authorization to do business which is not cured within sixty (60) days after such event; or merger with another entity; or the transfer, assignment, pledge, grant of security interest or sale of any financial or ownership interest or rights including any partnership interest, membership interest, stock, interest, equity interest, right of control or voting rights; or any change in control, or change in ownership interests, or change in percentage of ownership; or the sale or issuance of any new ownership, financial or voting interests; or the conveyance, assignment, sale or transfer of a material amount of its assets; or

g.       The occurrence of an event of default or the occurrence of an event which, with the passage of time or the giving of notice, or both, would constitute an event of default under any deed of trust, mortgage, security agreement or similar instrument encumbering the Collateral secured to Lender or any portion of the Collateral; or

h.       Should Borrower voluntarily or involuntarily, by any instrument, means, judicial proceeding or device whatsoever (including, but not limited to, any deed, lease, mortgage, deed of trust, assignment, option, judicial or sheriff's sale, order or contract) convey, transfer, sell, lease, assign, pledge or encumber any right or interest in the Collateral, whether legal or equitable, present or future, vested or contingent, except sales of inventory in the ordinary course of Borrower's business or with Lender's prior written consent; or

i.       Should the Collateral or any right, title or interest in the Collateral, whether legal or equitable, present or future, vested or contingent, including any right to manage, possess, control, operate, or use the Collateral be conveyed, transferred, sold, leased, assigned, pledged, attached or encumbered, whether voluntary or otherwise, whether by any proceeding, instrument, means, judicial or administrative proceeding or device whatsoever (including, but not limited to, any bill of sale, deed, lease, mortgage, deed of trust, security agreement, assignment, option, contract for sale, judgment, order, or contract), except sales of inventory in the ordinary course of Borrower's business or with Lender's prior written consent; or

j.       Commencement, notice, service or attachment of any proceeding, means, or device whatsoever seeking the control, use, attachment, seizure, possession, garnishment, levy, forfeiture, foreclosure, sale or transfer of any right, possession, use or interest in the Collateral in an amount greater than $100,000 which is not cured within ninety (90) days after such event; or should any right or interest in the Collateral, whether legal or equitable, present or future, vested or contingent be attached, seized, Liened (other than a Permitted Encumbrance) upon, encumbered, or garnished or subjected to sale whether by judicial sale, sheriffs sale, levy, garnishment, foreclosure sale, or public or private sale by any proceeding, means, judicial proceeding or device whatsoever; or should any rights, interest, possession or use of the Collateral be sequestered, limited, restrained, enjoined, or subject to the appointment of a Trustee, receiver, or custodian; or should any legal or equitable interest or title or any rights to possession, control, access or use of the Collateral be subject to any judicial or administrative proceeding; or

k.       Should Borrower, the Collateral or any rights, title, claims or interests in the Collateral, whether legal or equitable, present or future, vested or contingent, be subjected to any material attachment, injunction, execution, writ, Lien (other than a Permitted Encumbrance), notice, procedure or action, writ or warrant, including any notices issued or any action or proceeding filed or pending; or

5

l.     The death or incapacity of any Guarantor which is an individual; provided, however, the same shall not be a default or cause this Note to be accelerated so long as the estate of Guarantor signs or affirms this Guaranty, and Borrower and Lender, cooperating in good faith, find a guarantor with equivalent net worth to Guarantor or who is otherwise suitable to Lender in its sole discretion to replace Guarantor and his estate.

Notwithstanding anything to the contrary contained in this Note or in any of the other Loan Documents, said events described in subparagraphs a. through l. of this paragraph 7 shall not constitute an Event of Default unless (i) with regard to any monetary default or failure to pay any amount of money when due, such event, default or failure continues for a period of five (5) days after written notice to Borrower, and (ii) with regard to the performance or observance of any other provisions above for which no time limit is specified,  a failure to perform or observe continues for a period of thirty (30) days after written notice to Borrower.

7.     <u>Remedies upon Event of Default</u>. If an Event of Default occurs and is continuing, Lender may at any time thereafter, without notice, exercise any and all rights, powers and remedies permitted under the Loan Agreement, the other Loan Documents and under applicable law. Without limiting the foregoing, Lender may take the following actions:

a.     <u>Lender Lien</u>. Foreclose its security interest or lien against Borrower's deposit accounts without notice.

b.     <u>Acceleration Upon Event of Default</u>. Accelerate the maturity of this Note; whereupon then the entire principal sum outstanding under this Note, together with accrued interest thereon, fees, charges, and costs, if any, shall, without notice, at the option of Lender, at once become due and payable; provided, however, if the Event of Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, this Note shall automatically and immediately be due and payable.

c.     <u>Cumulative</u>. Exercise any rights and remedies as provided under this Note and other Loan Documents, or as provided by law or equity and said remedies shall be cumulative and shall include, but not be limited to, suit for judgment against Borrower, any endorser or any guarantor; obtaining possession, appointing a receiver, sale or other disposition of any part of or all of the Collateral and any assets and interests which are security for or collateral for the Indebtedness or which are held or owned by Lender; and the offset of any bank accounts and monies of Borrower, any endorser or any guarantor on deposit with Lender.

8.     <u>Governing Law</u>. The validity, construction and enforceability of, and the rights and obligations of Borrower and Lender under this Note shall be governed by, construed and enforced in accordance with, the laws of the State of Tennessee, except to the extent that federal law is applicable to determine the maximum rate of interest chargeable hereunder. This Note may be freely transferred by Lender. Furthermore, for the purpose of determining the rights and obligations of Borrower and Lender regarding this Note, it shall be deemed a negotiable instrument under the Uniform Commercial Code, as incorporated into applicable state law.

9.     <u>Miscellaneous</u>.

a.     Time is of the essence of each obligation of Borrower hereunder.

b.     In the event any provision of this Note (or any part of any provision hereof) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or

6

unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

c.      Borrower, for itself and its successors and assigns and any endorser or guarantor, for themselves/their heirs and representatives, jointly and severally, waives presentment, protest and demand, notice of protest, demand, dishonor, default and non-payment of this Note, and expressly agrees that this Note, unless otherwise set forth in this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of Borrower or any endorser or guarantor hereof.

d.      No failure to accelerate the Indebtedness by reason of any occurrence of one or more Events of Default, acceptance of a past-due installment or other indulgences granted from time to time, shall be construed as a novation of this Note or as a waiver of such right of acceleration or of the right of Lender thereafter to insist upon strict and timely compliance with the terms of this Note or to prevent the exercise of such right of acceleration or any other right granted hereunder or by applicable laws. No extension of the time for payment of the Indebtedness or any installment due hereunder, made by agreement with any person now or hereafter liable for payment of the Indebtedness, shall operate to release, discharge, modify, change or affect the original liability of Borrower hereunder or that of any other person now or hereafter liable for payment of the Indebtedness, either in whole or in part, unless Lender agrees otherwise in writing. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

e.      Borrower and any endorser or guarantor shall not be entitled to any notices of any nature whatsoever from Lender, except (i) with respect to matters to which this Note specifically and expressly provides for the giving of notice by Lender and (ii) with respect to matters which Lender is required by applicable law to give notice. Borrower expressly waives the right to receive any notice from Lender with respect to any matter for which this Note does not specifically and expressly provide for the giving of notice by Lender to Borrower.

f.      Whenever pursuant to this Note (i) Lender exercises any right given it to approve or disapprove, (ii) any arrangement or term is to be satisfactory to Lender, or (iii) any other decision or determination is to be made by Lender, all such decisions and determinations made by Lender shall be in the reasonable discretion of Lender, except as may be otherwise expressly and specifically provided herein.

g.      Borrower hereby irrevocably consents to the jurisdiction and venue of any state or federal court located within, or having jurisdiction over, the County of Davidson, Tennessee, for any disputes pertaining to this Note and/or the Indebtedness evidenced hereby, and agrees that, subject to Lender's sole and absolute election, any case or proceeding relating to Title XI of the United States Code and any actions relating to the Indebtedness evidenced hereby shall be litigated in such courts, and Borrower waives any objection which it may have based on improper venue or forum non conveniens to the conduct of any proceeding in any such court. Nothing contained in this paragraph shall affect the right of Lender to bring any action or proceeding against Borrower or its property in the courts of any other jurisdiction.

h.      Borrower, any co-borrower, and any endorser irrevocably waives all right to trial by jury in any court in any action (i) Lender brings to collect amounts owed to Lender under this Note; (ii) alleging that Lender has (A) breached this Note or any note modified or extended by this Note, (B) has breached any agreement relating to an extension of credit to Borrower, (C) has breached any other agreement, express or implied, (D) Lender or any of its officers, employees, representatives or agents have acted wrongfully, negligently, or otherwise tortiously, with respect to any Borrower, co-borrower, endorser, or guarantor; or (iii) between the parties. This waiver of trial by jury does not waive Borrower or Lender's right to bring a lawsuit that a judge, without a jury, would decide.

7

i.     Borrower, any co-borrower, and any endorser agree to pay all reasonable attorneys' fees, expenses, court costs and all other costs of whatever kind reasonably and actually incurred or paid by Lender, whether or not any legal proceeding is commenced and whether or not the debt has matured or an Event of Default has occurred or is continuing or default has been declared, incident to the Indebtedness, including, but not limited to: (i) the drafting, negotiation, and preparation of this Note and all other Loan Documents and the closing of the Loan; (ii) any extension, renewal, modification, amendment, consolidation, restructure, or refinancing of the Indebtedness; (iii) the release or substitution of any Collateral for the Indebtedness; (iv) obtaining consents, waivers, or approvals with respect to the Loan Documents and any Collateral; (v) the perfection, validity, priority, collection, enforcement, protection and defense of any Collateral and all Loan Documents executed in connection with the Indebtedness including any mortgage, security, assignments, pledges, security interests, or liens and all other rights and obligations therein; (vi) the collection, enforcement, protection and defense of any Collateral; (vii) the perfection, validity, and priority of Lender's interest in any Collateral; (viii) representation of Lender in any bankruptcy, receivership, insolvency, administrative, judicial, or other legal proceeding involving the Borrower, Guarantor, and/or Collateral irrespective of whether or not an Event of Default has incurred or default has been declared; and (ix) all reasonable attorneys' fees, expenses, costs, recording fees, taxes, and other costs of whatever kind incident to and necessary to document, record, perfect, and continue the priority and perfection of Borrower's mortgage, security interest, assignment, pledge, or lien in any Collateral.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

**IN WITNESS WHEREOF**, Borrower has caused this Note to be executed and delivered as of the date and year set out above.

**BORROWER:**

**6101 SLIGO, LLC**
**a Delaware limited liability company**

By: ACADEMY DEVELOPMENT
PARTNERS, LLC,
a Florida limited liability company, its Manager

By: _____
Timothy J. Morris, SIOR, CCIM
Managing Member

STATE OF FLORIDA )
COUNTY OF BROWARD ), ss:

Before me, the undersigned Notary Public, personally appeared Timothy Morris, with whom I am personally acquainted with (or proved to me on the basis of satisfactory evidence), and who upon oath, acknowledged himself to be the Managing Manager of Academy Development Partners, LLC, the Manager of 6101 SLIGO, LLC, a Delaware limited liability company, the within named Borrower, and that he as such Managing Member executed the foregoing instrument for the purposes therein by signing the name of the limited liability company as Managing Member of its Manager.

Witness my hand and seal, at office, this _3/8_ day of January, 2022.

(SEAL)
Notary Public

_J. Fred Anderson_
NOTARY Public

_10-23-23_
My commission expires:

I, FRED ANDERSON
Commission # GG 268712
Expires October 23, 2022
Bonded Thru Budget Notary Services

*Signature Page to Promissory Note (Term Loan)*

## AMENDED AND RESTATED PROMISSORY NOTE
### (Term Loan)

---

**THIS AMENDED AND RESTATED PROMISSORY NOTE (TERM LOAN) IS AN AMENDMENT, MODIFICATION, RENEWAL, EXTENSION AND RESTATEMENT OF THAT CERTAIN PROMISSORY NOTE (TERM LOAN), DATED JANUARY 31, 2022, EXECUTED BY BORROWER PAYABLE TO THE ORDER OF LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF FOUR MILLION NINE HUNDRED THOUSAND AND NO/100 DOLLARS ($4,900,000.00), AS AMENDED FROM TIME TO TIME (THE "*PRIOR NOTE*"). THIS NOTE SHALL NOT CONSTITUTE AND SHALL NOT BE CONSTRUED AS, A NOVATION OF THE PRIOR NOTE OR ANY INDEBTEDNESS EVIDENCED THEREBY.**

---

$5,300,000.00

Nashville, Tennessee
May 26, 2022

1.  <u>Promise to Pay.</u> **FOR VALUE RECEIVED, 6101 SLIGO, LLC,** a Delaware limited liability company ("***Borrower***"), promises to pay to the order of **OAKWORTH CAPITAL BANK,** an Alabama banking corporation ("***Lender***"; Lender and any subsequent holders hereof being referred to collectively and separately as "***Holder***"), at the office of Holder at 5511 Virginia Way, Suite 110, Brentwood, Tennessee 37027, or at such other places as Holder shall designate in writing, advances up to the original principal sum of **FIVE MILLION THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($5,300,000.00),** or, if different, the principal balance outstanding hereunder together with interest on the outstanding principal balance at the rate(s) and in accordance with the terms set forth below. All payments under this Amended and Restated Promissory Note (this "***Note***") must be made in collected funds with lawful money of the United States of America at Lender's main office or at such other location as Holder hereof directs in writing.

2.  <u>Interest.</u>

    a.  Interest shall accrue on the unpaid principal balance of this Note at that rate of interest which is the Index, as defined herein, plus three-quarters percent (0.75%) (the "***Interest Rate***") per annum and as adjusted from time to time; *provided, however,* in no event shall the interest rate be less than four percent (4.00%). Interest shall be calculated on the basis of a 360 day year for actual days elapsed. The Index is currently 4.00% per annum resulting in an initial Interest Rate of 4.75% per annum. The Index is defined to mean the Prime Rate of interest published from time to time by The Wall Street Journal as such rate and shall be computed on the daily outstanding principal balance of the Indebtedness evidenced hereby (such rate, the "***Index***"). In the event The Wall Street Journal publishes more than one Prime Rate of interest, the Index is defined to mean the higher Prime Rate of interest published from time to time by The Wall Street Journal as such rate. If at any time or from time to time the Index increases or decreases, then the rate of interest hereunder shall be correspondingly increased or decreased, effective on the date any such increase or decrease is published or announced. In the event that The Wall Street Journal, during the term hereof, shall abolish or abandon the practice of publishing a Prime Rate, or should the same become unascertainable, the Holder shall designate a comparable reference rate which shall be deemed to be the Index for purposes hereof.

    b.  Beginning on the Maturity Date, or from the date of the occurrence of any Event of Default, Lender shall be entitled to charge and Borrower shall pay interest at the lesser of (i) the Interest Rate plus eight percent (8.0%), or (ii) maximum rate of interest which may be charged on the date hereof or on the date of

2

default or on the Maturity Date, whichever is greater (the "***Default Rate***"). At Lender's option, the Default Rate shall be computed from the occurrence of Maturity Date or an Event of Default until the earlier of the date upon which the Event of Default is cured or the date upon which the Indebtedness is paid in full.

       c.    Notwithstanding anything to the contrary contained herein, the effective rate of interest on the Indebtedness evidenced by this Note shall not exceed the lawful maximum rate of interest permitted to be accrued or collected. Without limiting the generality of the foregoing, in the event the interest accrued or collected hereunder results in an effective rate of interest higher than that lawfully permitted to be accrued or collected, then such Interest Rate shall be reduced to the lawful maximum Interest Rate permitted to be accrued or collected by applicable law, and any amount previously paid or paid in the future which would exceed the highest lawful rate shall be applied to a reduction of principal (without premium or penalty) and not to the payment of interest.

       d.    If for any reason the accrual of interest on this Note at the Interest Rate is voided by a court of competent jurisdiction, or if for any reason such court finds that the Interest Rate is different from the rate designated by the Holder, then this Note shall be deemed to have accrued interest from the date of execution at the highest rate permitted by law.

       3.    <u>Repayment Terms</u>.

       a.    This Note establishes a term loan to be used by Borrower in accordance with the terms of that certain Amended and Restated Loan Agreement between Borrower and Lender dated as of even date herewith, (as amended, restated, supplemented or otherwise modified from time to time, the "***Loan Agreement***"; capitalized terms which are undefined herein shall have the meanings given to such terms in the Loan Agreement). Commencing on the 31st day of May, 2022 and continuing on the last day of each month thereafter until the Maturity Date, the accrued interest shall be payable in consecutive monthly installments, based on the outstanding principal balance of the Loan. All principal and any unpaid accrued interest shall be payable in full on earlier of (i) the 31st day of January, 2023 (the "***Maturity Date***") or (ii) upon acceleration by Lender based on the occurrence of one or more Events of Default ("***Acceleration***"). In addition, all other outstanding expenses and amounts owing hereunder or under any Loan Document (as defined in the Loan Agreement) shall be due and payable in full at the Maturity Date. Borrower hereby expressly requests that any and all payments of accrued interest during the term of this Note shall be direct debited from Borrower's demand deposit account held with Lender, as follows: Routing No. 062006709; Account No. 50020635.

       b.    If any payment received by Lender under this Note or other Loan Documents is rescinded, avoided, or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

       c.    Payments received after 2:00 p.m. CST on a Business Day of Lender or such other cut-off times established from time to time by Lender or on weekends or bank holidays will be credited as of the next Business Day of Lender. If any payment is to be made on a day which is not a Business Day, payment shall instead be made on the following Business Day.

       d.    All payments by Borrower in respect of principal of the Loan shall include payment of accrued and unpaid interest on the principal amount being repaid or prepaid, and all such payments (and, in any event, any payments in respect of the Loan on a date when interest is due and payable with respect thereto) shall be applied to the payment of accrued and unpaid interest before application to principal of the Loan.

3

e.      Borrower shall pay to Lender a late charge equal to the greater of $250.00 or five percent (5.0%) of any regularly scheduled monthly installment payment (and specifically excluding amounts due on the Maturity Date or upon Acceleration), including any interest, not paid within ten (10) days of the due date of such amount, not as a penalty, but as compensation to the Lender for the cost of collecting and processing such late payment. Borrower agrees that such late charge represents a good faith reasonable estimate of the probable cost to Lender of such delinquency. Lender shall have no obligation to accept any late payment not accompanied by said late charge, but if Lender does so, Lender shall not thereby waive its right to the late charge. Such late charge shall be in addition to, and not in lieu of, any other right or remedy Lender may have, including the right to receive principal and interest and to reimbursement of costs and expenses.

f.      Borrower may prepay the outstanding principal of this Note, or any part thereof, from time to time without penalty, upon not less than five (5) Business Days prior written or telephonic notice (if telephonic, confirmed in writing) given to Lender by 11:00 a.m. CST, on the date required. Any notice of prepayment given to Lender shall be irrevocable once given. Upon the giving of any such notice, the amount of the outstanding principal balance of the Loan specified to be prepaid in such notice, together with all accrued and unpaid interest thereon, shall be due and payable in full on the prepayment date specified therein. Any amounts so prepaid on the Loan may not be re-borrowed.

4.      Collateral. This Note is secured by certain collateral (the "*Collateral*") described in the Loan Agreement, to which Loan Agreement reference is hereby made for a description of rights of Lender of this Note upon the occurrence of any Event of Default.

5.      Guaranty. As consideration for this Note, Timothy Morris (the "*Guarantor*") executed a Continuing Guaranty, dated as of January 31, 2022, as reaffirmed pursuant to that certain Reaffirmation of Continuing Guaranty, dated of even date herewith (individually and together, the "*Guaranty*") to which Guaranty reference is hereby made for a description of the rights of the Holder of this Note in the event of default. Borrower acknowledges and agrees that, as an inducement for Lender to provide financing in connection with this Note (and the Loan Documents), any future subsidiary shall promptly execute a guaranty agreement in form and substance as requested by Lender, to guarantee the payment of this Note and the Loan Documents.

6.      Events of Default. This Note shall be in default upon the occurrence of any of the following events (each, an "*Event of Default*"):

a.      Failure to pay the Indebtedness, or any part thereof, when and as the same shall become due and payable; or

b.      If any warranty, covenant, representation, agreement or statement made, furnished or contained in this Note, the Deed of Trust or in any other Loan Document, or in any other instrument, transfer, assignment, document or loan agreement given with respect to the Indebtedness, be untrue or misleading in any material respect when made; or

c.      The nonperformance, nonobservance, breach or failure to execute in every particular the covenants, agreements, promises, obligations, warranties and conditions set out in this Note or in any Loan Document, or in any other instrument given with respect to the Indebtedness; or

d.      The occurrence of an event of default or the material nonperformance, nonobservance, default, breach or failure to timely comply, perform, observe, deliver, furnish, or execute in every particular the terms, covenants, agreements, promises, obligations, warranties and conditions set out in any other note,

4

document, instrument or agreement between Borrower and Lender with respect to any other indebtedness of Borrower or owed to Lender, and such default is not cured within any applicable cure period; or

     e.     The filing by or against Borrower or any maker or endorser of the Indebtedness of a voluntary or involuntary petition in bankruptcy; or any Borrower's, maker's or endorser's adjudication as a bankrupt or insolvent, which is not cured within ninety (90) days; or the filing by Borrower, maker, endorser of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for it under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency, receivership or other relief for debtors, which is not dismissed within ninety (90) days; or Borrower's, maker's, or endorser's seeking or consenting to or acquiescing in the appointment of any trustee, receiver, liquidator or examiner of Borrower, maker or endorser of all or any part of the collateral secured to Lender, including, but not limited to, rents, issues, profits or revenues thereof; or the making by Borrower, maker or endorser of any general assignment for the benefit of creditors; or the admission in writing by Borrower, maker or endorser of its inability to pay its debts generally as they become due; or the commission by Borrower, maker or endorser of an act of bankruptcy; or the dissolution or termination of existence of Borrower, maker or endorser; or

     f.     The occurrence of any cessation of a material part of Borrower's business; or any consolidation, reorganization, restructure, dissolution, or of any part of its business; liquidation or any revocation or any termination of existence which is not cured within sixty (60) days after such event (regardless of whether election to continue is made); or any expiration, revocation or other termination of its charter, operating agreement, organizational agreement, certificate of authority, good standing, or authorization to do business which is not cured within sixty (60) days after such event; or merger with another entity; or the transfer, assignment, pledge, grant of security interest or sale of any financial or ownership interest or rights including any partnership interest, membership interest, stock, interest, equity interest, right of control or voting rights; or any change in control, or change in ownership interests, or change in percentage of ownership; or the sale or issuance of any new ownership, financial or voting interests; or the conveyance, assignment, sale or transfer of a material amount of its assets; or

     g.     The occurrence of an event of default or the occurrence of an event which, with the passage of time or the giving of notice, or both, would constitute an event of default under any deed of trust, mortgage, security agreement or similar instrument encumbering the Collateral secured to Lender or any portion of the Collateral; or

     h.     Should Borrower voluntarily or involuntarily, by any instrument, means, judicial proceeding or device whatsoever (including, but not limited to, any deed, lease, mortgage, deed of trust, assignment, option, judicial or sheriff's sale, order or contract) convey, transfer, sell, lease, assign, pledge or encumber any right or interest in the Collateral, whether legal or equitable, present or future, vested or contingent, except sales of inventory in the ordinary course of Borrower's business or with Lender's prior written consent; or

     i.     Should the Collateral or any right, title or interest in the Collateral, whether legal or equitable, present or future, vested or contingent, including any right to manage, possess, control, operate, or use the Collateral be conveyed, transferred, sold, leased, assigned, pledged, attached or encumbered, whether voluntary or otherwise, whether by any proceeding, instrument, means, judicial or administrative proceeding or device whatsoever (including, but not limited to, any bill of sale, deed, lease, mortgage, deed of trust, security agreement, assignment, option, contract for sale, judgment, order, or contract), except sales of inventory in the ordinary course of Borrower's business or with Lender's prior written consent; or

     j.     Commencement, notice, service or attachment of any proceeding, means, or device whatsoever seeking the control, use, attachment, seizure, possession, garnishment, levy, forfeiture,

5

foreclosure, sale or transfer of any right, possession, use or interest in the Collateral in an amount greater than $100,000 which is not cured within ninety (90) days after such event; or should any right or interest in the Collateral, whether legal or equitable, present or future, vested or contingent be attached, seized, Liened (other than a Permitted Encumbrance) upon, encumbered, or garnished or subjected to sale whether by judicial sale, sheriffs sale, levy, garnishment, foreclosure sale, or public or private sale by any proceeding, means, judicial proceeding or device whatsoever; or should any rights, interest, possession or use of the Collateral be sequestered, limited, restrained, enjoined, or subject to the appointment of a Trustee, receiver, or custodian; or should any legal or equitable interest or title or any rights to possession, control, access or use of the Collateral be subject to any judicial or administrative proceeding; or

k.      Should Borrower, the Collateral or any rights, title, claims or interests in the Collateral, whether legal or equitable, present or future, vested or contingent, be subjected to any material attachment, injunction, execution, writ, Lien (other than a Permitted Encumbrance), notice, procedure or action, writ or warrant, including any notices issued or any action or proceeding filed or pending; or

l.      The death or incapacity of any Guarantor which is an individual; provided, however, the same shall not be a default or cause this Note to be accelerated so long as the estate of Guarantor signs or affirms this Guaranty, and Borrower and Lender, cooperating in good faith, find a guarantor with equivalent net worth to Guarantor or who is otherwise suitable to Lender in its sole discretion to replace Guarantor and his estate.

Notwithstanding anything to the contrary contained in this Note or in any of the other Loan Documents, said events described in subparagraphs a. through l. of this paragraph 7 shall not constitute an Event of Default unless (i) with regard to any monetary default or failure to pay any amount of money when due, such event, default or failure continues for a period of five (5) days after written notice to Borrower, and (ii) with regard to the performance or observance of any other provisions above for which no time limit is specified, a failure to perform or observe continues for a period of thirty (30) days after written notice to Borrower.

7.      Remedies upon Event of Default. If an Event of Default occurs and is continuing, Lender may at any time thereafter, without notice, exercise any and all rights, powers and remedies permitted under the Loan Agreement, the other Loan Documents and under applicable law. Without limiting the foregoing, Lender may take the following actions:

a.      Lender Lien. Foreclose its security interest or lien against Borrower's deposit accounts without notice.

b.      Acceleration Upon Event of Default. Accelerate the maturity of this Note; whereupon then the entire principal sum outstanding under this Note, together with accrued interest thereon, fees, charges, and costs, if any, shall, without notice, at the option of Lender, at once become due and payable; provided, however, if the Event of Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, this Note shall automatically and immediately be due and payable.

c.      Cumulative. Exercise any rights and remedies as provided under this Note and other Loan Documents, or as provided by law or equity and said remedies shall be cumulative, include, but not be limited to, suit for judgment against Borrower, any endorser or any guarantor; obtaining possession, appointing a receiver, sale or other disposition of any part of or all of the Collateral and any assets and interests which are security for or collateral for the Indebtedness or which are held or owned by Lender; and the offset of any bank accounts and monies of Borrower, any endorser or any guarantor on deposit with Lender.

6

8.     Governing Law. The validity, construction and enforceability of, and the rights and obligations of Borrower and Lender under this Note shall be governed by, construed and enforced in accordance with, the laws of the State of Tennessee, except to the extent that federal law is applicable to determine the maximum rate of interest chargeable hereunder. This Note may be freely transferred by Lender. Furthermore, for the purpose of determining the rights and obligations of Borrower and Lender regarding this Note, it shall be deemed a negotiable instrument under the Uniform Commercial Code, as incorporated into applicable state law.

9.     Miscellaneous.

a.     This Note is an amendment, modification and restatement of that certain term loan to Borrower and is issued not as a refinancing or refunding of or payment toward, but as a continuation of, and consolidation of, the obligations of Borrower to Lender pursuant to the Promissory Note (Term Loan) in the original principal amount of $4,900,000.00 dated January 31, 2022 (together with all amendments thereto or restatements thereof, the "*Prior Note*"). Accordingly, this Note shall not be construed as a novation or extinguishment of the obligations evidenced by the Prior Note, and its issuance shall not affect the priority of any lien granted in connection with the Prior Note. Interest accrued under the Prior Note prior to the date of this Note remains accrued and unpaid under this Note and does not constitute any part of the principal amount of the indebtedness evidenced hereby.

b.     Time is of the essence of each obligation of Borrower hereunder.

c.     In the event any provision of this Note (or any part of any provision hereof) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

d.     Borrower, for itself and its successors and assigns and any endorser or guarantor, for themselves/their heirs and representatives, jointly and severally, waives presentment, protest and demand, notice of protest, demand, dishonor, default and non-payment of this Note, and expressly agrees that this Note, unless otherwise set forth in this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of Borrower or any endorser or guarantor hereof.

e.     No failure to accelerate the Indebtedness by reason of any occurrence of one or more Events of Default, acceptance of a past-due installment or other indulgences granted from time to time, shall be construed as a novation of this Note or as a waiver of such right of acceleration or of the right of Lender thereafter to insist upon strict and timely compliance with the terms of this Note or to prevent the exercise of such right of acceleration or any other right granted hereunder or by applicable laws. No extension of the time for payment of the Indebtedness or any installment due hereunder, made by agreement with any person now or hereafter liable for payment of the Indebtedness, shall operate to release, discharge, modify, change or affect the original liability of Borrower hereunder or that of any other person now or hereafter liable for payment of the Indebtedness, either in whole or in part, unless Lender agrees otherwise in writing. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

f.     Borrower and any endorser or guarantor shall not be entitled to any notices of any nature whatsoever from Lender, except (i) with respect to matters to which this Note specifically and expressly provides for the giving of notice by Lender and (ii) with respect to matters which Lender is required by applicable law to give notice. Borrower expressly waives the right to receive any notice from Lender with

7

respect to any matter for which this Note does not specifically and expressly provide for the giving of notice by Lender to Borrower.

  g.  Whenever pursuant to this Note (i) Lender exercises any right given it to approve or disapprove, (ii) any arrangement or term is to be satisfactory to Lender, or (iii) any other decision or determination is to be made by Lender, all such decisions and determinations made by Lender shall be in the reasonable discretion of Lender, except as may be otherwise expressly and specifically provided herein.

  h.  Borrower hereby irrevocably consents to the jurisdiction and venue of any state or federal court located within, or having jurisdiction over, the County of Davidson, Tennessee, for any disputes pertaining to this Note and/or the Indebtedness evidenced hereby, and agrees that, subject to Lender's sole and absolute election, any case or proceeding relating to Title XI of the United States Code and any actions relating to the Indebtedness evidenced hereby shall be litigated in such courts, and Borrower waives any objection which it may have based on improper venue or forum non conveniens to the conduct of any proceeding in any such court. Nothing contained in this paragraph shall affect the right of Lender to bring any action or proceeding against Borrower or its property in the courts of any other jurisdiction.

  i.  Borrower, any co-borrower, and any endorser irrevocably waives all right to trial by jury in any court in any action (i) Lender brings to collect amounts owed to Lender under this Note; (ii) alleging that Lender has (A) breached this Note or any note modified or extended by this Note, (B) has breached any agreement relating to an extension of credit to Borrower, (C) has breached any other agreement, express or implied, (D) Lender or any of its officers, employees, representatives or agents have acted wrongfully, negligently, or otherwise tortiously, with respect to any Borrower, co-borrower, endorser, or guarantor; or (iii) between the parties. This waiver of trial by jury does not waive Borrower or Lender's right to bring a lawsuit that a judge, without a jury, would decide.

  j.  Borrower, any co-borrower, and any endorser agree to pay all reasonable attorneys' fees, expenses, court costs and all other costs of whatever kind reasonably and actually incurred or paid by Lender, whether or not any legal proceeding is commenced and whether or not the debt has matured or an Event of Default has occurred or is continuing or default has been declared, incident to the Indebtedness, including, but not limited to: (i) the drafting, negotiation, and preparation of this Note and all other Loan Documents and the closing of the Loan; (ii) any extension, renewal, modification, amendment, consolidation, restructure, or refinancing of the Indebtedness; (iii) the release or substitution of any Collateral for the Indebtedness; (iv) obtaining consents, waivers, or approvals with respect to the Loan Documents and any Collateral; (v) the perfection, validity, priority, collection, enforcement, protection and defense of any Collateral and all Loan Documents executed in connection with the Indebtedness including any mortgage, security, assignments, pledges, security interests, or liens and all other rights and obligations therein; (vi) the collection, enforcement, protection and defense of any Collateral; (vii) the perfection, validity, and priority of Lender's interest in any Collateral; (viii) representation of Lender in any bankruptcy, receivership, insolvency, administrative, judicial, or other legal proceeding involving the Borrower, Guarantor, and/or Collateral irrespective of whether or not an Event of Default has incurred or default has been declared; and (ix) all reasonable attorneys' fees, expenses, costs, recording fees, taxes, and other costs of whatever kind incident to and necessary to document, record, perfect, and continue the priority and perfection of Borrower's mortgage, security interest, assignment, pledge, or lien in any Collateral.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

8

**IN WITNESS WHEREOF**, Borrower has caused this Note to be executed and delivered as of the date and year set out above.

**BORROWER:**

**6101 SLIGO, LLC**
a Delaware limited liability company

By: ACADEMY DEVELOPMENT
PARTNERS, LLC,
a Florida limited liability company, its Manager

By: _____
     Timothy J. Morris, SIOR, CCIM
     Managing Member

Tennessee     )
Cheatham     ), ss:

Before me, the undersigned Notary Public, personally appeared Timothy Morris, with whom I am personally acquainted with (or proved to me on the basis of satisfactory evidence), and who upon oath, acknowledged himself to be the Managing Manager of Academy Development Partners, LLC, the Manager of 6101 SLIGO, LLC, a Delaware limited liability company, the within named Borrower, and that he as such Managing Member executed the foregoing instrument for the purposes therein by signing the name of the limited liability company as Managing Member of its Manager.

Witness my hand and seal, at office, this 26th day of May, 2022.

(SEAL)
Notary Public

My commission expires:

3/8/25

*Signature Page to Amended and Restated Promissory Note (Term Loan)*



## SECOND AMENDED AND RESTATED PROMISSORY NOTE
### (Term Loan)

_____

**THIS SECOND AMENDED AND RESTATED PROMISSORY NOTE (TERM LOAN) IS AN AMENDMENT, MODIFICATION, RENEWAL, EXTENSION AND RESTATEMENT OF THAT CERTAIN PROMISSORY NOTE (TERM LOAN), DATED JANUARY 31, 2022, EXECUTED BY BORROWER PAYABLE TO THE ORDER OF LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF FOUR MILLION NINE HUNDRED THOUSAND AND NO/100 DOLLARS ($4,900,000.00), AS AMENDED BY THAT CERTAIN AMENDED AND RESTATED PROMISSORY NOTE (TERM LOAN), DATED MAY 26, 2022, EXECUTED BY BORROWER PAYABLE TO THE ORDER OF LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF FIVE MILLION THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($5,300,000.00), AS FURTHER AMENDED FROM TIME TO TIME (THE "_PRIOR NOTE_").  THIS NOTE SHALL NOT CONSTITUTE AND SHALL NOT BE CONSTRUED AS, A NOVATION OF THE PRIOR NOTE OR ANY INDEBTEDNESS EVIDENCED THEREBY.**

_____

$5,300,000.00

Nashville, Tennessee
March 16, 2023

1.      Promise to Pay. **FOR VALUE RECEIVED**, **6101 SLIGO, LLC,** a Delaware limited liability company ("**_Borrower_**"), promises to pay to the order of **OAKWORTH CAPITAL BANK,** an Alabama banking corporation ("**_Lender_**"; Lender and any subsequent holders hereof being referred to collectively and separately as "**_Holder_**"), at the office of Holder at 5511 Virginia Way, Suite 110, Brentwood, Tennessee 37027, or at such other places as Holder shall designate in writing, advances up to the original principal sum of **FIVE MILLION THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($5,300,000.00)**, or, if different, the principal balance outstanding hereunder together with interest on the outstanding principal balance at the rate(s) in and in accordance with the terms set forth below. All payments under this Second Amended and Restated Promissory Note (this "**_Note_**") must be made in collected funds with lawful money of the United States of America at Lender's main office or at such other location as Holder hereof directs in writing.

2.      Interest.

        a.      Interest shall accrue on the unpaid principal balance of this Note at that rate of interest which is the Index, as defined herein, plus three-quarters percent (0.75%) (the "**_Interest Rate_**") per annum and as adjusted from time to time; _provided_, _however_, in no event shall the interest rate be less than four percent (4.00%). Interest shall be calculated on the basis of a 360 day year for actual days elapsed. The Index is currently 4.00% per annum resulting in an initial Interest Rate of 4.75% per annum. The Index is defined to mean the Prime Rate of interest published from time to time by The Wall Street Journal as such rate and shall be computed on the daily outstanding principal balance of the Indebtedness evidenced hereby (such rate, the "**_Index_**"). In the event The Wall Street Journal publishes more than one Prime Rate of interest, the Index is defined to mean the higher Prime Rate of interest published from time to time by The Wall Street Journal as such rate. If at any time or from time to time the Index increases or decreases, then the rate of interest hereunder shall be correspondingly increased or decreased, effective on the date any such increase or decrease is published or announced. In the event that The Wall Street Journal, during the term hereof, shall abolish or abandon the practice of publishing a Prime Rate, or should the same become unascertainable, the Holder shall designate a comparable reference rate which shall be deemed to be the Index for purposes hereof.

2

b.      Beginning on the Maturity Date, or from the date of the occurrence of any Event of Default, Lender shall be entitled to charge and Borrower shall pay interest at the lesser of (i) the Interest Rate plus eight percent (8.0%), or (ii) maximum rate of interest which may be charged on the date hereof or on the date of default or on the Maturity Date, whichever is greater (the "***Default Rate***"). At Lender's option, the Default Rate shall be computed from the occurrence of Maturity Date or an Event of Default until the earlier of the date upon which the Event of Default is cured or the date upon which the Indebtedness is paid in full.

c.      Notwithstanding anything to the contrary contained herein, the effective rate of interest on the Indebtedness evidenced by this Note shall not exceed the lawful maximum rate of interest permitted to be accrued or collected. Without limiting the generality of the foregoing, in the event the interest accrued or collected hereunder results in an effective rate of interest higher than that lawfully permitted to be accrued or collected, then such Interest Rate shall be reduced to the lawful maximum Interest Rate permitted to be accrued or collected by applicable law, and any amount previously paid or paid in the future which would exceed the highest lawful rate shall be applied to a reduction of principal (without premium or penalty) and not to the payment of interest.

d.      If for any reason the accrual of interest on this Note at the Interest Rate is voided by a court of competent jurisdiction, or if for any reason such court finds that the Interest Rate is different from the rate designated by the Holder, then this Note shall be deemed to have accrued interest from the date of execution at the highest rate permitted by law.

3.      <u>Repayment Terms</u>.

a.      This Note establishes a term loan to be used by Borrower in accordance with the terms of that certain Second Amended and Restated Loan Agreement between Borrower and Lender dated as of even date herewith, (as amended, restated, supplemented or otherwise modified from time to time, the "***Loan Agreement***"; capitalized terms which are undefined herein shall have the meanings given to such terms in the Loan Agreement). Commencing on the 31st day of March, 2023 and continuing on the last day of each month thereafter until the Maturity Date, the accrued interest shall be payable in consecutive monthly installments, based on the outstanding principal balance of the Loan. All principal and any unpaid accrued interest shall be payable in full on earlier of (i) the 1st day of May, 2023 (the "***Maturity Date***") or (ii) upon acceleration by Lender based on the occurrence of one or more Events of Default ("***Acceleration***"). In addition, all other outstanding expenses and amounts owing hereunder or under any Loan Document (as defined in the Loan Agreement) shall be due and payable in full at the Maturity Date. Borrower hereby expressly requests that any and all payments of accrued interest during the term of this Note shall be direct debited from Borrower's demand deposit account held with Lender, as follows: Routing No. 062006709; Account No. 50020635.

b.      If any payment received by Lender under this Note or other Loan Documents is rescinded, avoided, or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

c.      Payments received after 2:00 p.m. CST on a Business Day of Lender or such other cut-off times established from time to time by Lender or on weekends or bank holidays will be credited as of the next Business Day of Lender. If any payment is to be made on a day which is not a Business Day, payment shall instead be made on the following Business Day.

d.      All payments by Borrower in respect of principal of the Loan shall include payment of accrued and unpaid interest on the principal amount being repaid or prepaid, and all such payments (and, in any event, any payments in respect of the Loan on a date when interest is due and payable with respect

3

thereto) shall be applied to the payment of accrued and unpaid interest before application to principal of the Loan.

e. Borrower shall pay to Lender a late charge equal to the greater of $250.00 or five percent (5.0%) of any regularly scheduled monthly installment payment (and specifically excluding amounts due on the Maturity Date or upon Acceleration), including any interest, not paid within ten (10) days of the due date of such amount, not as a penalty, but as compensation to the Lender for the cost of collecting and processing such late payment. Borrower agrees that such late charge represents a good faith reasonable estimate of the probable cost to Lender of such delinquency. Lender shall have no obligation to accept any late payment not accompanied by said late charge, but if Lender does so, Lender shall not thereby waive its right to the late charge. Such late charge shall be in addition to, and not in lieu of, any other right or remedy Lender may have, including the right to receive principal and interest and to reimbursement of costs and expenses.

f. Borrower may prepay the outstanding principal of this Note, or any part thereof, from time to time without penalty, upon not less than five (5) Business Days prior written or telephonic notice (if telephonic, confirmed in writing) given to Lender by 11:00 a.m. CST, on the date required. Any notice of prepayment given to Lender shall be irrevocable once given. Upon the giving of any such notice, the amount of the outstanding principal balance of the Loan specified to be prepaid in such notice, together with all accrued and unpaid interest thereon, shall be due and payable in full on the prepayment date specified therein. Any amounts so prepaid on the Loan may not be re-borrowed.

4. <u>Collateral</u>. This Note is secured by certain collateral (the "***Collateral***") described in the Loan Agreement, to which Loan Agreement reference is hereby made for a description of rights of Lender of this Note upon the occurrence of any Event of Default.

5. <u>Guaranty</u>. As consideration for this Note, Timothy Morris (the "***Guarantor***") executed a Continuing Guaranty, dated as of January 31, 2022, as reaffirmed pursuant to that certain Reaffirmation of Continuing Guaranty, dated of even date herewith (individually and together, the "***Guaranty***") to which Guaranty reference is hereby made for a description of the rights of the Holder of this Note in the event of default. Borrower acknowledges and agrees that, as an inducement for Lender to provide financing in connection with this Note (and the Loan Documents), any future subsidiary shall promptly execute a guaranty agreement in form and substance as requested by Lender, to guarantee the payment of this Note and the Loan Documents.

6. <u>Events of Default</u>. This Note shall be in default upon the occurrence of any of the following events (each, an "***Event of Default***"):

a. Failure to pay the Indebtedness, or any part thereof, when and as the same shall become due and payable; or

b. If any warranty, covenant, representation, agreement or statement made, furnished or contained in this Note, the Deed of Trust or in any other Loan Document, or in any other instrument, transfer, assignment, document or loan agreement given with respect to the Indebtedness, be untrue or misleading in any material respect when made; or

c. The nonperformance, nonobservance, breach or failure to execute in every particular the covenants, agreements, promises, obligations, warranties and conditions set out in this Note or in any Loan Document, or in any other instrument given with respect to the Indebtedness; or

4

d.　　The occurrence of an event of default or the material nonperformance, nonobservance, default, breach or failure to timely comply, perform, observe, deliver, furnish, or execute in every particular the terms, covenants, agreements, promises, obligations, warranties and conditions set out in any other note, document, instrument or agreement between Borrower and Lender with respect to any other indebtedness of Borrower or owed to Lender, and such default is not cured within any applicable cure period; or

e.　　The filing by or against Borrower or any maker or endorser of the Indebtedness of a voluntary or involuntary petition in bankruptcy; or any Borrower's, maker's or endorser's adjudication as a bankrupt or insolvent, which is not cured within ninety (90) days; or the filing by Borrower, maker, endorser of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for it under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency, receivership or other relief for debtors, which is not dismissed within ninety (90) days; or Borrower's, maker's, or endorser's seeking or consenting to or acquiescing in the appointment of any trustee, receiver, liquidator or examiner of Borrower, maker or endorser of all or any part of the collateral secured to Lender, including, but not limited to, rents, issues, profits or revenues thereof; or the making by Borrower, maker or endorser of any general assignment for the benefit of creditors; or the admission in writing by Borrower, maker or endorser of its inability to pay its debts generally as they become due; or the commission by Borrower, maker or endorser of an act of bankruptcy; or the dissolution or termination of existence of Borrower, maker or endorser; or

f.　　The occurrence of any cessation of a material part of Borrower's business; or any consolidation, reorganization, restructure, dissolution, or of any part of its business; liquidation or any revocation or any termination of existence which is not cured within sixty (60) days after such event (regardless of whether election to continue is made); or any expiration, revocation or other termination of its charter, operating agreement, organizational agreement, certificate of authority, good standing, or authorization to do business which is not cured within sixty (60) days after such event; or merger with another entity; or the transfer, assignment, pledge, grant of security interest or sale of any financial or ownership interest or rights including any partnership interest, membership interest, stock, interest, equity interest, right of control or voting rights; or any change in control, or change in ownership interests, or change in percentage of ownership; or the sale or issuance of any new ownership, financial or voting interests; or the conveyance, assignment, sale or transfer of a material amount of its assets; or

g.　　The occurrence of an event of default or the occurrence of an event which, with the passage of time or the giving of notice, or both, would constitute an event of default under any deed of trust, mortgage, security agreement or similar instrument encumbering the Collateral secured to Lender or any portion of the Collateral; or

h.　　Should Borrower voluntarily or involuntarily, by any instrument, means, judicial proceeding or device whatsoever (including, but not limited to, any deed, lease, mortgage, deed of trust, assignment, option, judicial or sheriff's sale, order or contract) convey, transfer, sell, lease, assign, pledge or encumber any right or interest in the Collateral, whether legal or equitable, present or future, vested or contingent, except sales of inventory in the ordinary course of Borrower's business or with Lender's prior written consent; or

i.　　Should the Collateral or any right, title or interest in the Collateral, whether legal or equitable, present or future, vested or contingent, including any right to manage, possess, control, operate, or use the Collateral be conveyed, transferred, sold, leased, assigned, pledged, attached or encumbered, whether voluntary or otherwise, whether by any proceeding, instrument, means, judicial or administrative proceeding or device whatsoever (including, but not limited to, any bill of sale, deed, lease, mortgage, deed of trust, security agreement, assignment, option, contract for sale, judgment, order, or contract), except sales of inventory in the ordinary course of Borrower's business or with Lender's prior written consent; or

5

j. Commencement, notice, service or attachment of any proceeding, means, or device whatsoever seeking the control, use, attachment, seizure, possession, garnishment, levy, forfeiture, foreclosure, sale or transfer of any right, possession, use or interest in the Collateral in an amount greater than $100,000 which is not cured within ninety (90) days after such event; or should any right or interest in the Collateral, whether legal or equitable, present or future, vested or contingent be attached, seized, Liened (other than a Permitted Encumbrance) upon, encumbered, or garnished or subjected to sale whether by judicial sale, sheriffs sale, levy, garnishment, foreclosure sale, or public or private sale by any proceeding, means, judicial proceeding or device whatsoever; or should any rights, interest, possession or use of the Collateral be sequestered, limited, restrained, enjoined, or subject to the appointment of a Trustee, receiver, or custodian; or should any legal or equitable interest or title or any rights to possession, control, access or use of the Collateral be subject to any judicial or administrative proceeding; or

k. Should Borrower, the Collateral or any rights, title, claims or interests in the Collateral, whether legal or equitable, present or future, vested or contingent, be subjected to any material attachment, injunction, execution, writ, Lien (other than a Permitted Encumbrance), notice, procedure or action, writ or warrant, including any notices issued or any action or proceeding filed or pending; or

l. The death or incapacity of any Guarantor which is an individual; provided, however, the same shall not be a default or cause this Note to be accelerated so long as the estate of Guarantor signs or affirms this Guaranty, and Borrower and Lender, cooperating in good faith, find a guarantor with equivalent net worth to Guarantor or who is otherwise suitable to Lender in its sole discretion to replace Guarantor and his estate.

Notwithstanding anything to the contrary contained in this Note or in any of the other Loan Documents, said events described in subparagraphs a. through l. of this paragraph 7 shall not constitute an Event of Default unless (i) with regard to any monetary default or failure to pay any amount of money when due, such event, default or failure continues for a period of five (5) days after written notice to Borrower, and (ii) with regard to the performance or observance of any other provisions above for which no time limit is specified, a failure to perform or observe continues for a period of thirty (30) days after written notice to Borrower.

7. <u>Remedies upon Event of Default</u>. If an Event of Default occurs and is continuing, Lender may at any time thereafter, without notice, exercise any and all rights, powers and remedies permitted under the Loan Agreement, the other Loan Documents and under applicable law. Without limiting the foregoing, Lender may take the following actions:

a. <u>Lender Lien</u>. Foreclose its security interest or lien against Borrower's deposit accounts without notice.

b. <u>Acceleration Upon Event of Default</u>. Accelerate the maturity of this Note; whereupon then the entire principal sum outstanding under this Note, together with accrued interest thereon, fees, charges, and costs, if any, shall, without notice, at the option of Lender, at once become due and payable; provided, however, if the Event of Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, this Note shall automatically and immediately be due and payable.

c. <u>Cumulative</u>. Exercise any rights and remedies as provided under this Note and other Loan Documents, or as provided by law or equity and said remedies shall be cumulative and shall include, but not be limited to, suit for judgment against Borrower, any endorser or any guarantor; obtaining possession, appointing a receiver, sale or other disposition of any part of or all of the Collateral and any assets and interests which are security for or collateral for the Indebtedness or which are held or owned by Lender;

6

and the offset of any bank accounts and monies of Borrower, any endorser or any guarantor on deposit with Lender.

8.      Governing Law. The validity, construction and enforceability of, and the rights and obligations of Borrower and Lender under this Note shall be governed by, construed and enforced in accordance with, the laws of the State of Tennessee, except to the extent that federal law is applicable to determine the maximum rate of interest chargeable hereunder. This Note may be freely transferred by Lender. Furthermore, for the purpose of determining the rights and obligations of Borrower and Lender regarding this Note, it shall be deemed a negotiable instrument under the Uniform Commercial Code, as incorporated into applicable state law.

9.      Miscellaneous.

a.      This Note is an amendment, modification and restatement of that certain term loan to Borrower and is issued not as a refinancing or refunding of or payment toward, but as a continuation of, and consolidation of, the obligations of Borrower to Lender pursuant to the Promissory Note (Term Loan) in the original principal amount of $4,900,000.00 dated January 31, 2022, as amended by that certain Amended and Restated Promissory Note (Term Loan) in the original principal amount of $5,300,000.00 dated May 26, 2022 (together with all amendments thereto or restatements thereof, the "*Prior Note*"). Accordingly, this Note shall not be construed as a novation or extinguishment of the obligations evidenced by the Prior Note, and its issuance shall not affect the priority of any lien granted in connection with the Prior Note. Interest accrued under the Prior Note prior to the date of this Note remains accrued and unpaid under this Note and does not constitute any part of the principal amount of the indebtedness evidenced hereby.

b.      Time is of the essence of each obligation of Borrower hereunder.

c.      In the event any provision of this Note (or any part of any provision hereof) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

d.      Borrower, for itself and its successors and assigns and any endorser or guarantor, for themselves/their heirs and representatives, jointly and severally, waives presentment, protest and demand, notice of protest, demand, dishonor, default and non-payment of this Note, and expressly agrees that this Note, unless otherwise set forth in this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of Borrower or any endorser or guarantor hereof.

e.      No failure to accelerate the Indebtedness by reason of any occurrence of one or more Events of Default, acceptance of a past-due installment or other indulgences granted from time to time, shall be construed as a novation of this Note or as a waiver of such right of acceleration or of the right of Lender thereafter to insist upon strict and timely compliance with the terms of this Note or to prevent the exercise of such right of acceleration or any other right granted hereunder or by applicable laws. No extension of the time for payment of the Indebtedness or any installment due hereunder, made by agreement with any person now or hereafter liable for payment of the Indebtedness, shall operate to release, discharge, modify, change or affect the original liability of Borrower hereunder or that of any other person now or hereafter liable for payment of the Indebtedness, either in whole or in part, unless Lender agrees otherwise in writing. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

7

f.       Borrower and any endorser or guarantor shall not be entitled to any notices of any nature whatsoever from Lender, except (i) with respect to matters to which this Note specifically and expressly provides for the giving of notice by Lender and (ii) with respect to matters which Lender is required by applicable law to give notice. Borrower expressly waives the right to receive any notice from Lender with respect to any matter for which this Note does not specifically and expressly provide for the giving of notice by Lender to Borrower.

g.       Whenever pursuant to this Note (i) Lender exercises any right given it to approve or disapprove, (ii) any arrangement or term is to be satisfactory to Lender, or (iii) any other decision or determination is to be made by Lender, all such decisions and determinations made by Lender shall be in the reasonable discretion of Lender, except as may be otherwise expressly and specifically provided herein.

h.       Borrower hereby irrevocably consents to the jurisdiction and venue of any state or federal court located within, or having jurisdiction over, the County of Davidson, Tennessee, for any disputes pertaining to this Note and/or the Indebtedness evidenced hereby, and agrees that, subject to Lender's sole and absolute election, any case or proceeding relating to Title XI of the United States Code and any actions relating to the Indebtedness evidenced hereby shall be litigated in such courts, and Borrower waives any objection which it may have based on improper venue or forum non conveniens to the conduct of any proceeding in any such court. Nothing contained in this paragraph shall affect the right of Lender to bring any action or proceeding against Borrower or its property in the courts of any other jurisdiction.

i.       Borrower, any co-borrower, and any endorser irrevocably waives all right to trial by jury in any court in any action (i) Lender brings to collect amounts owed to Lender under this Note; (ii) alleging that Lender has (A) breached this Note or any note modified or extended by this Note, (B) has breached any agreement relating to an extension of credit to Borrower, (C) has breached any other agreement, express or implied, (D) Lender or any of its officers, employees, representatives or agents have acted wrongfully, negligently, or otherwise tortiously, with respect to any Borrower, co-borrower, endorser, or guarantor; or (iii) between the parties. This waiver of trial by jury does not waive Borrower or Lender's right to bring a lawsuit that a judge, without a jury, would decide.

j.       Borrower, any co-borrower, and any endorser agree to pay all reasonable attorneys' fees, expenses, court costs and all other costs of whatever kind reasonably and actually incurred or paid by Lender, whether or not any legal proceeding is commenced and whether or not the debt had matured or an Event of Default has occurred or is continuing or default has been declared, incident to the Indebtedness, including, but not limited to: (i) the drafting, negotiation, and preparation of this Note and all other Loan Documents and the closing of the Loan; (ii) any extension, renewal, modification, amendment, consolidation, restructure, or refinancing of the Indebtedness; (iii) the release or substitution of any Collateral for the Indebtedness; (iv) obtaining consents, waivers, or approvals with respect to the Loan Documents and any Collateral; (v) the perfection, validity, priority, collection, enforcement, protection and defense of any Collateral and all Loan Documents executed in connection with the Indebtedness including any mortgage, security, assignments, pledges, security interests, or liens and all other rights and obligations therein; (vi) the collection, enforcement, protection and defense of any Collateral; (vii) the perfection, validity, and priority of Lender's interest in any Collateral; (viii) representation of Lender in any bankruptcy, receivership, insolvency, administrative, judicial, or other legal proceeding involving the Borrower, Guarantor, and/or Collateral irrespective of whether or not an Event of Default has incurred or default has been declared; and (ix) all reasonable attorneys' fees, expenses, costs, recording fees, taxes, and other costs of whatever kind incident to and necessary to document, record, perfect, and continue the priority and perfection of Borrower's mortgage, security interest, assignment, pledge, or lien in any Collateral.

8

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

9

**IN WITNESS WHEREOF**, Borrower has caused this Note to be executed and delivered as of the date and year set out above.

**BORROWER:**

**6101 SLIGO, LLC**
a Delaware limited liability company

By:  ACADEMY DEVELOPMENT
PARTNERS, LLC,
a Florida limited liability company, its Manager


By: _____
Timothy J. Morris, SIOR, CCIM
Managing Member

_____ )
_____ ), ss:

Before me, the undersigned Notary Public, personally appeared Timothy Morris, with whom I am personally acquainted with (or proved to me on the basis of satisfactory evidence), and who upon oath, acknowledged himself to be the Managing Manager of Academy Development Partners, LLC, the Manager of 6101 SLIGO, LLC, a Delaware limited liability company, the within named Borrower, and that he as such Managing Member executed the foregoing instrument for the purposes therein by signing the name of the limited liability company as Managing Member of its Manager.

Witness my hand and seal, at office, this 16th day of March, 2023.


(SEAL)
Notary Public


My commission expires:

# citrix | RightSignature

**REFERENCE NUMBER**
56670D1F-9245-4343-8666-43C70F73E5FD

## SIGNATURE CERTIFICATE

### TRANSACTION DETAILS

**Reference Number**
56670D1F-9245-4343-8666-43C70F73E5FD

**Transaction Type**
Signature Request

**Sent At**
03/23/2023 14:01 CDT

**Executed At**
03/23/2023 14:51 CDT

**Identity Method**
email

**Distribution Method**
email

**Signed Checksum**
3cacd7e81a9487ea7af94bc6ea7677080e3f6206e88504251c91543846143057

**Signer Sequencing**
Disabled

**Document Passcode**
Disabled

### DOCUMENT DETAILS

**Document Name**
Oakwork Capital Bank 6101 Sligo--Amendment Documents

**Filename**
oakwork_capital_bank_6101_sligo--amendment_documents.pdf

**Pages**
53 pages

**Content Type**
application/pdf

**File Size**
1.94 MB

**Original Checksum**
1ef25f56786970afaafcd3b43510f798952e736e5c8ba48e0c81eb42f9a70473

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>Kaytlin Stroinski<br>**Email**<br>kaytlin.stroinski@oakworth.com<br>**Components**<br>1 | **Status**<br>signed<br>**Multi-factor Digital Fingerprint Checksum**<br>f89bd12e4c0b6e2e7bf788c90dcf305e5290bacdfaea6e110887ad8667bd4d77<br>**IP Address**<br>174.236.33.133<br>**Device**<br>Mobile Safari via iOS<br>**Drawn Signature**<br><br>**Signature Reference ID**<br>02509F30<br>**Signature Biometric Count**<br>5 | **Viewed At**<br>03/23/2023 14:51 CDT<br>**Identity Authenticated At**<br>03/23/2023 14:51 CDT<br>**Signed At**<br>03/23/2023 14:51 CDT |
| **Name**<br>Timothy J. Morris<br>**Email**<br>tim@m2developmentpartners.com<br>**Components**<br>13 | **Status**<br>signed<br>**Multi-factor Digital Fingerprint Checksum**<br>2a43c831032bc3c9e3cd3c0e0c903473deac4af2ec38850199180a89195f3051<br>**IP Address**<br>69.137.160.205<br>**Device**<br>Microsoft Edge via iOS<br>**Drawn Signature**<br><br>**Signature Reference ID**<br>81B35C35<br>**Signature Biometric Count**<br>1 | **Viewed At**<br>03/23/2023 14:41 CDT<br>**Identity Authenticated At**<br>03/23/2023 14:41 CDT<br>**Signed At**<br>03/23/2023 14:41 CDT |
| **Name**<br>Scott Woolsey | **Status**<br>signed | **Viewed At**<br>03/23/2023 14:37 CDT |

## THIRD AMENDED AND RESTATED PROMISSORY NOTE
### (Term Loan)

THIS THIRD AMENDED AND RESTATED PROMISSORY NOTE (TERM LOAN) IS AN AMENDMENT, MODIFICATION, RENEWAL, EXTENSION AND RESTATEMENT OF THAT CERTAIN PROMISSORY NOTE (TERM LOAN), DATED JANUARY 31, 2022, EXECUTED BY BORROWER PAYABLE TO THE ORDER OF LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF FOUR MILLION NINE HUNDRED THOUSAND AND NO/100 DOLLARS ($4,900,000.00), AS AMENDED BY THAT CERTAIN AMENDED AND RESTATED PROMISSORY NOTE (TERM LOAN), DATED MAY 26, 2022, EXECUTED BY BORROWER PAYABLE TO THE ORDER OF LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF FIVE MILLION THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($5,300,000.00), AS AMENDED BY THAT CERTAIN SECOND AMENDED AND RESTATED PROMISSORY NOTE (TERM LOAN), DATED MARCH 16, 2023, EXECUTED BY BORROWER PAYABLE TO THE ORDER OF LENDER, IN THE ORIGINAL PRINCIPAL AMOUNT OF FIVE MILLION THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($5,300,000.00), AS FURTHER AMENDED FROM TIME TO TIME (THE "*PRIOR NOTE*"). THIS NOTE SHALL NOT CONSTITUTE AND SHALL NOT BE CONSTRUED AS, A NOVATION OF THE PRIOR NOTE OR ANY INDEBTEDNESS EVIDENCED THEREBY.

$5,300,000.00                                              Nashville, Tennessee
                                              Dated and Effective: May 1, 2023

1.      Promise to Pay. **FOR VALUE RECEIVED, 6101 SLIGO, LLC,** a Delaware limited liability company ("*Borrower*"), promises to pay to the order of **OAKWORTH CAPITAL BANK,** an Alabama banking corporation ("*Lender*"; Lender and any subsequent holders hereof being referred to collectively and separately as "*Holder*"), at the office of Holder at 5511 Virginia Way, Suite 110, Brentwood, Tennessee 37027, or at such other places as Holder shall designate in writing, advances up to the original principal sum of **FIVE MILLION THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($5,300,000.00),** or, if different, the principal balance outstanding hereunder together with interest on the outstanding principal balance at the rate(s) and in accordance with the terms set forth below. All payments under this Third Amended and Restated Promissory Note (this "*Note*") must be made in collected funds with lawful money of the United States of America at Lender's main office or at such other location as Holder hereof directs in writing.

2.      Interest.

        a.      Interest shall accrue on the unpaid principal balance of this Note at that rate of interest which is the Index, as defined herein, plus three-quarters percent (0.75%) (the "*Interest Rate*") per annum and as adjusted from time to time; *provided, however,* in no event shall the interest rate be less than four percent (4.00%). Interest shall be calculated on the basis of a 360 day year for actual days elapsed. The Index is currently 4.00% per annum resulting in an initial Interest Rate of 4.75% per annum. The Index is defined to mean the Prime Rate of interest published from time to time by The Wall Street Journal as such rate and shall be computed on the daily outstanding principal balance of the Indebtedness evidenced hereby (such rate, the "*Index*"). In the event The Wall Street Journal publishes more than one Prime Rate of interest, the Index is defined to mean the higher Prime Rate of interest published from time to time by The Wall Street Journal as such rate. If at any time or from time to time the Index increases or decreases, then the rate of interest hereunder shall be correspondingly increased or decreased, effective on the date any

2

such increase or decrease is published or announced. In the event that The Wall Street Journal, during the term hereof, shall abolish or abandon the practice of publishing a Prime Rate, or should the same become unascertainable, the Holder shall designate a comparable reference rate which shall be deemed to be the Index for purposes hereof.

b.      Beginning on the Maturity Date, or from the date of the occurrence of any Event of Default, Lender shall be entitled to charge and Borrower shall pay interest at the lesser of (i) the Interest Rate plus eight percent (8.0%), or (ii) maximum rate of interest which may be charged on the date hereof or on the date of default or on the Maturity Date, whichever is greater (the "*Default Rate*"). At Lender's option, the Default Rate shall be computed from the occurrence of Maturity Date or an Event of Default until the earlier of the date upon which the Event of Default is cured or the date upon which the Indebtedness is paid in full.

c.      Notwithstanding anything to the contrary contained herein, the effective rate of interest on the Indebtedness evidenced by this Note shall not exceed the lawful maximum rate of interest permitted to be accrued or collected. Without limiting the generality of the foregoing, in the event the interest accrued or collected hereunder results in an effective rate of interest higher than that lawfully permitted to be accrued or collected, then such Interest Rate shall be reduced to the lawful maximum Interest Rate permitted to be accrued or collected by applicable law, and any amount previously paid or paid in the future which would exceed the highest lawful rate shall be applied to a reduction of principal (without premium or penalty) and not to the payment of interest.

d.      If for any reason the accrual of interest on this Note at the Interest Rate is voided by a court of competent jurisdiction, or if for any reason such court finds that the Interest Rate is different from the rate designated by the Holder, then this Note shall be deemed to have accrued interest from the date of execution at the highest rate permitted by law.

3.      Repayment Terms.

a.      This Note establishes a term loan to be used by Borrower in accordance with the terms of that certain Third Amended and Restated Loan Agreement between Borrower and Lender dated as of even date herewith, (as amended, restated, supplemented or otherwise modified from time to time, the "*Loan Agreement*"; capitalized terms which are undefined herein shall have the meanings given to such terms in the Loan Agreement). Commencing on the 31st day of May, 2023 and continuing on the last day of each month thereafter until the Maturity Date, the accrued interest shall be payable in consecutive monthly installments, based on the outstanding principal balance of the Loan. All principal and any unpaid accrued interest shall be payable in full on earlier of (i) the 9th day of August, 2023 (the "*Maturity Date*") or (ii) upon acceleration by Lender based on the occurrence of one or more Events of Default ("*Acceleration*"). In addition, all other outstanding expenses and amounts owing hereunder or under any Loan Document (as defined in the Loan Agreement) shall be due and payable in full at the Maturity Date. Borrower hereby expressly requests that any and all payments of accrued interest during the term of this Note shall be direct debited from Borrower's demand deposit account held with Lender, as follows: Routing No. 062006709; Account No. 50020635.

b.      If any payment received by Lender under this Note or other Loan Documents is rescinded, avoided, or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

c.      Payments received after 2:00 p.m. CST on a Business Day of Lender or such other cut-off times established from time to time by Lender or on weekends or bank holidays will be credited as of the

3

next Business Day of Lender. If any payment is to be made on a day which is not a Business Day, payment shall instead be made on the following Business Day.

d.    All payments by Borrower in respect of principal of the Loan shall include payment of accrued and unpaid interest on the principal amount being repaid or prepaid, and all such payments (and, in any event, any payments in respect of the Loan on a date when interest is due and payable with respect thereto) shall be applied to the payment of accrued and unpaid interest before application to principal of the Loan.

e.    Borrower shall pay to Lender a late charge equal to the greater of $250.00 or five percent (5.0%) of any regularly scheduled monthly installment payment (and specifically excluding amounts due on the Maturity Date or upon Acceleration), including any interest, not paid within ten (10) days of the due date of such amount, not as a penalty, but as compensation to the Lender for the cost of collecting and processing such late payment. Borrower agrees that such late charge represents a good faith reasonable estimate of the probable cost to Lender of such delinquency. Lender shall have no obligation to accept any late payment not accompanied by said late charge, but if Lender does so, Lender shall not thereby waive its right to the late charge. Such late charge shall be in addition to, and not in lieu of, any other right or remedy Lender may have, including the right to receive principal and interest and to reimbursement of costs and expenses.

f.    Borrower may prepay the outstanding principal of this Note, or any part thereof, from time to time without penalty, upon not less than five (5) Business Days prior written or telephonic notice (if telephonic, confirmed in writing) given to Lender by 11:00 a.m. CST, on the date required. Any notice of prepayment given to Lender shall be irrevocable once given. Upon the giving of any such notice, the amount of the outstanding principal balance of the Loan specified to be prepaid in such notice, together with all accrued and unpaid interest thereon, shall be due and payable in full on the prepayment date specified therein. Any amounts so prepaid on the Loan may not be re-borrowed.

4.    <u>Collateral</u>. This Note is secured by certain collateral (the "*Collateral*") described in the Loan Agreement, to which Loan Agreement reference is hereby made for a description of rights of Lender of this Note upon the occurrence of any Event of Default.

5.    <u>Guaranty</u>. As consideration for this Note, Timothy Morris (the "*Guarantor*") executed a Continuing Guaranty, dated as of January 31, 2022, as reaffirmed pursuant to that certain Reaffirmation of Continuing Guaranty, dated of even date herewith (individually and together, the "*Guaranty*") to which Guaranty reference is hereby made for a description of the rights of the Holder of this Note in the event of default. Borrower acknowledges and agrees that, as an inducement for Lender to provide financing in connection with this Note (and the Loan Documents), any future subsidiary shall promptly execute a guaranty agreement in form and substance as requested by Lender, to guarantee the payment of this Note and the Loan Documents.

6.    <u>Events of Default</u>. This Note shall be in default upon the occurrence of any of the following events (each, an "*Event of Default*"):

a.    Failure to pay the Indebtedness, or any part thereof, when and as the same shall become due and payable; or

b.    If any warranty, covenant, representation, agreement or statement made, furnished or contained in this Note, the Deed of Trust or in any other Loan Document, or in any other instrument, transfer, assignment, document or loan agreement given with respect to the Indebtedness, be untrue or misleading in any material respect when made; or

4

c.       The nonperformance, nonobservance, breach or failure to execute in every particular the covenants, agreements, promises, obligations, warranties and conditions set out in this Note or in any Loan Document, or in any other instrument given with respect to the Indebtedness; or

d.       The occurrence of an event of default or the material nonperformance, nonobservance, default, breach or failure to timely comply, perform, observe, deliver, furnish, or execute in every particular the terms, covenants, agreements, promises, obligations, warranties and conditions set out in any other note, document, instrument or agreement between Borrower and Lender with respect to any other indebtedness of Borrower or owed to Lender, and such default is not cured within any applicable cure period; or

e.       The filing by or against Borrower or any maker or endorser of the Indebtedness of a voluntary or involuntary petition in bankruptcy; or any Borrower's, maker's or endorser's adjudication as a bankrupt or insolvent, which is not cured within ninety (90) days; or the filing by Borrower, maker, endorser of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for it under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency, receivership or other relief for debtors, which is not dismissed within ninety (90) days; or Borrower's, maker's, or endorser's seeking or consenting to or acquiescing in the appointment of any trustee, receiver, liquidator or examiner of Borrower, maker or endorser of all or any part of the collateral secured to Lender, including, but not limited to, rents, issues, profits or revenues thereof; or the making by Borrower, maker or endorser of any general assignment for the benefit of creditors; or the admission in writing by Borrower, maker or endorser of its inability to pay its debts generally as they become due; or the commission by Borrower, maker or endorser of an act of bankruptcy; or the dissolution or termination of existence of Borrower, maker or endorser; or

f.       The occurrence of any cessation of a material part of Borrower's business; or any consolidation, reorganization, restructure, dissolution, or of any part of its business; liquidation or any revocation or any termination of existence which is not cured within sixty (60) days after such event (regardless of whether election to continue is made); or any expiration, revocation or other termination of its charter, operating agreement, organizational agreement, certificate of authority, good standing, or authorization to do business which is not cured within sixty (60) days after such event; or merger with another entity; or the transfer, assignment, pledge, grant of security interest or sale of any financial or ownership interest or rights including any partnership interest, membership interest, stock, interest, equity interest, right of control or voting rights; or any change in control, or change in ownership interests, or change in percentage of ownership; or the sale or issuance of any new ownership, financial or voting interests; or the conveyance, assignment, sale or transfer of a material amount of its assets; or

g.       The occurrence of an event of default or the occurrence of an event which, with the passage of time or the giving of notice, or both, would constitute an event of default under any deed of trust, mortgage, security agreement or similar instrument encumbering the Collateral secured to Lender or any portion of the Collateral; or

h.       Should Borrower voluntarily or involuntarily, by any instrument, means, judicial proceeding or device whatsoever (including, but not limited to, any deed, lease, mortgage, deed of trust, assignment, option, judicial or sheriff's sale, order or contract) convey, transfer, sell, lease, assign, pledge or encumber any right or interest in the Collateral, whether legal or equitable, present or future, vested or contingent, except sales of inventory in the ordinary course of Borrower's business or with Lender's prior written consent; or

i.       Should the Collateral or any right, title or interest in the Collateral, whether legal or equitable, present or future, vested or contingent, including any right to manage, possess, control, operate, or use the Collateral be conveyed, transferred, sold, leased, assigned, pledged, attached or encumbered, whether

5

voluntary or otherwise, whether by any proceeding, instrument, means, judicial or administrative proceeding or device whatsoever (including, but not limited to, any bill of sale, deed, lease, mortgage, deed of trust, security agreement, assignment, option, contract for sale, judgment, order, or contract), except sales of inventory in the ordinary course of Borrower's business or with Lender's prior written consent; or

j.　Commencement, notice, service or attachment of any proceeding, means, or device whatsoever seeking the control, use, attachment, seizure, possession, garnishment, levy, forfeiture, foreclosure, sale or transfer of any right, possession, use or interest in the Collateral in an amount greater than $100,000 which is not cured within ninety (90) days after such event; or should any right or interest in the Collateral, whether legal or equitable, present or future, vested or contingent be attached, seized, Liened (other than a Permitted Encumbrance) upon, encumbered, or garnished or subjected to sale whether by judicial sale, sheriffs sale, levy, garnishment, foreclosure sale, or public or private sale by any proceeding, means, judicial proceeding or device whatsoever; or should any rights, interest, possession or use of the Collateral be sequestered, limited, restrained, enjoined, or subject to the appointment of a Trustee, receiver, or custodian; or should any legal or equitable interest or title or any rights to possession, control, access or use of the Collateral be subject to any judicial or administrative proceeding; or

k.　Should Borrower, the Collateral or any rights, title, claims or interests in the Collateral, whether legal or equitable, present or future, vested or contingent, be subjected to any material attachment, injunction, execution, writ, Lien (other than a Permitted Encumbrance), notice, procedure or action, writ or warrant, including any notices issued or any action or proceeding filed or pending; or

l.　The death or incapacity of any Guarantor which is an individual; provided, however, the same shall not be a default or cause this Note to be accelerated so long as the estate of Guarantor signs or affirms this Guaranty, and Borrower and Lender, cooperating in good faith, find a guarantor with equivalent net worth to Guarantor or who is otherwise suitable to Lender in its sole discretion to replace Guarantor and his estate.

Notwithstanding anything to the contrary contained in this Note or in any of the other Loan Documents, said events described in subparagraphs a. through l. of this paragraph 7 shall not constitute an Event of Default unless (i) with regard to any monetary default or failure to pay any amount of money when due, such event, default or failure continues for a period of five (5) days after written notice to Borrower, and (ii) with regard to the performance or observance of any other provisions above for which no time limit is specified, a failure to perform or observe continues for a period of thirty (30) days after written notice to Borrower.

7.　Remedies upon Event of Default. If an Event of Default occurs and is continuing, Lender may at any time thereafter, without notice, exercise any and all rights, powers and remedies permitted under the Loan Agreement, the other Loan Documents and under applicable law. Without limiting the foregoing, Lender may take the following actions:

a.　Lender Lien. Foreclose its security interest or lien against Borrower's deposit accounts without notice.

b.　Acceleration Upon Event of Default. Accelerate the maturity of this Note; whereupon then the entire principal sum outstanding under this Note, together with accrued interest thereon, fees, charges, and costs, if any, shall, without notice, at the option of Lender, at once become due and payable; provided, however, if the Event of Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, this Note shall automatically and immediately be due and payable.

6

c.      <u>Cumulative</u>. Exercise any rights and remedies as provided under this Note and other Loan Documents, or as provided by law or equity and said remedies shall be cumulative and shall include, but not be limited to, suit for judgment against Borrower, any endorser or any guarantor; obtaining possession, appointing a receiver, sale or other disposition of any part of or all of the Collateral and any assets and interests which are security for or collateral for the Indebtedness or which are held or owned by Lender; and the offset of any bank accounts and monies of Borrower, any endorser or any guarantor on deposit with Lender.

8.      <u>Governing Law</u>. The validity, construction and enforceability of, and the rights and obligations of Borrower and Lender under this Note shall be governed by, construed and enforced in accordance with, the laws of the State of Tennessee, except to the extent that federal law is applicable to determine the maximum rate of interest chargeable hereunder. This Note may be freely transferred by Lender. Furthermore, for the purpose of determining the rights and obligations of Borrower and Lender regarding this Note, it shall be deemed a negotiable instrument under the Uniform Commercial Code, as incorporated into applicable state law.

9.      <u>Miscellaneous</u>.

a.      This Note is an amendment, modification and restatement of that certain term loan to Borrower and is issued not as a refinancing or refunding of or payment toward, but as a continuation of, and consolidation of, the obligations of Borrower to Lender pursuant to the Promissory Note (Term Loan) in the original principal amount of $4,900,000.00 dated January 31, 2022, as amended by that certain Amended and Restated Promissory Note (Term Loan) in the original principal amount of $5,300,000.00 dated May 26, 2022, as further amended by that certain Second Amended and Restated Promissory Note (Term Loan) in the original principal amount of $5,300,000.00 dated March 16, 2023 (together with all amendments thereto or restatements thereof, the "***Prior Note***"). Accordingly, this Note shall not be construed as a novation or extinguishment of the obligations evidenced by the Prior Note, and its issuance shall not affect the priority of any lien granted in connection with the Prior Note. Interest accrued under the Prior Note prior to the date of this Note remains accrued and unpaid under this Note and does not constitute any part of the principal amount of the indebtedness evidenced hereby.

b.      Time is of the essence of each obligation of Borrower hereunder.

c.      In the event any provision of this Note (or any part of any provision hereof) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

d.      Borrower, for itself and its successors and assigns and any endorser or guarantor, for themselves/their heirs and representatives, jointly and severally, waives presentment, protest and demand, notice of protest, demand, dishonor, default and non-payment of this Note, and expressly agrees that this Note, unless otherwise set forth in this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of Borrower or any endorser or guarantor hereof.

e.      No failure to accelerate the Indebtedness by reason of any occurrence of one or more Events of Default, acceptance of a past-due installment or other indulgences granted from time to time, shall be construed as a novation of this Note or as a waiver of such right of acceleration or of the right of Lender thereafter to insist upon strict and timely compliance with the terms of this Note or to prevent the exercise of such right of acceleration or any other right granted hereunder or by applicable laws. No extension of the time for payment of the Indebtedness or any installment due hereunder, made by agreement with any person now

7

or hereafter liable for payment of the Indebtedness, shall operate to release, discharge, modify, change or affect the original liability of Borrower hereunder or that of any other person now or hereafter liable for payment of the Indebtedness, either in whole or in part, unless Lender agrees otherwise in writing. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

        f.        Borrower and any endorser or guarantor shall not be entitled to any notices of any nature whatsoever from Lender, except (i) with respect to matters to which this Note specifically and expressly provides for the giving of notice by Lender and (ii) with respect to matters which Lender is required by applicable law to give notice. Borrower expressly waives the right to receive any notice from Lender with respect to any matter for which this Note does not specifically and expressly provide for the giving of notice by Lender to Borrower.

        g.       Whenever pursuant to this Note (i) Lender exercises any right given it to approve or disapprove, (ii) any arrangement or term is to be satisfactory to Lender, or (iii) any other decision or determination is to be made by Lender, all such decisions and determinations made by Lender shall be in the reasonable discretion of Lender, except as may be otherwise expressly and specifically provided herein.

        h.       Borrower hereby irrevocably consents to the jurisdiction and venue of any state or federal court located within, or having jurisdiction over, the County of Davidson, Tennessee, for any disputes pertaining to this Note and/or the Indebtedness evidenced hereby, and agrees that, subject to Lender's sole and absolute election, any case or proceeding relating to Title XI of the United States Code and any actions relating to the Indebtedness evidenced hereby shall be litigated in such courts, and Borrower waives any objection which it may have based on improper venue or forum non conveniens to the conduct of any proceeding in any such court. Nothing contained in this paragraph shall affect the right of Lender to bring any action or proceeding against Borrower or its property in the courts of any other jurisdiction.

        i.        Borrower, any co-borrower, and any endorser irrevocably waives all right to trial by jury in any court in any action (i) Lender brings to collect amounts owed to Lender under this Note; (ii) alleging that Lender has (A) breached this Note or any note modified or extended by this Note, (B) has breached any agreement relating to an extension of credit to Borrower, (C) has breached any other agreement, express or implied, (D) Lender or any of its officers, employees, representatives or agents have acted wrongfully, negligently, or otherwise tortiously, with respect to any Borrower, co-borrower, endorser, or guarantor; or (iii) between the parties. This waiver of trial by jury does not waive Borrower or Lender's right to bring a lawsuit that a judge, without a jury, would decide.

        j.        Borrower, any co-borrower, and any endorser agree to pay all reasonable attorneys' fees, expenses, court costs and all other costs of whatever kind reasonably and actually incurred or paid by Lender, whether or not any legal proceeding is commenced and whether or not the debt has matured or an Event of Default has occurred or is continuing or default has been declared, incident to the Indebtedness, including, but not limited to: (i) the drafting, negotiation, and preparation of this Note and all other Loan Documents and the closing of the Loan; (ii) any extension, renewal, modification, amendment, consolidation, restructure, or refinancing of the Indebtedness; (iii) the release or substitution of any Collateral for the Indebtedness; (iv) obtaining consents, waivers, or approvals with respect to the Loan Documents and any Collateral; (v) the perfection, validity, priority, collection, enforcement, protection and defense of any Collateral and all Loan Documents executed in connection with the Indebtedness including any mortgage, security, assignments, pledges, security interests, or liens and all other rights and obligations therein; (vi) the collection, enforcement, protection and defense of any Collateral; (vii) the perfection, validity, and priority of Lender's interest in any Collateral; (viii) representation of Lender in any bankruptcy, receivership, insolvency, administrative, judicial, or other legal proceeding involving the Borrower, Guarantor, and/or Collateral irrespective of whether or not an Event of Default has incurred or default has been declared; and (ix) all

reasonable attorneys' fees, expenses, costs, recording fees, taxes, and other costs of whatever kind incident to and necessary to document, record, perfect, and continue the priority and perfection of Borrower's mortgage, security interest, assignment, pledge, or lien in any Collateral.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

9

**IN WITNESS WHEREOF**, Borrower has caused this Note to be executed and delivered as of the date and year set out above.

**BORROWER:**

**6101 SLIGO, LLC**
a Delaware limited liability company

By:  ACADEMY DEVELOPMENT
PARTNERS, LLC,
a Florida limited liability company, its Manager

By: _____
Timothy J. Morris, SIOR, CCIM
Managing Member

TENNESSEE )
DAVIDSON COUNTY )ss:

Before me, the undersigned Notary Public, personally appeared Timothy Morris, with whom I am personally acquainted with (or proved to me on the basis of satisfactory evidence), and who upon oath, acknowledged himself to be the Managing Manager of Academy Development Partners, LLC, the Manager of 6101 SLIGO, LLC, a Delaware limited liability company, the within named Borrower, and that he as such Managing Member executed the foregoing instrument for the purposes therein by signing the name of the limited liability company as Managing Member of its Manager.

Witness my hand and seal, at office, this 29 day of June, 2023.

(SEAL)
Notary Public

My commission expires: 11/3/25

ELLEN K SEVIER
STATE
OF
TENNESSEE
NOTARY
PUBLIC
DAVIDSON COUNTY

*Signature Page to Third Amended and Restated Promissory Note (Term Loan)*

# CONTINUING GUARANTY

THIS CONTINUING GUARANTY (this "**_Guaranty_**") is executed and effective the 31st day of January, 2022, by **TIMOTHY MORRIS**, an individual resident of Tennessee ("**_Guarantor_**") in favor of **OAKWORTH CAPITAL BANK**, an Alabama banking corporation ("**_Lender_**"), with its principal offices located at 5511 Virginia Way, Suite 110, Brentwood, Tennessee 37027 in order to induce Lender to extend credit to **6101 SLIGO, LLC**, a Delaware limited liability company ("**_Borrower_**").

## W I T N E S S E T H :

As an inducement to cause Lender to extend credit to Borrower, without which Guaranty Borrower would be unable to obtain credit from Lender, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor agrees with Lender that:

1.      **Definition of Obligations.** As used in this Guaranty, the term "**_Obligations_**", shall collectively mean all present and future debts and other obligations of Borrower specifically arising out of the Loan, defined below, (and/or any successor(s) thereof) to Lender and Lender's successors, successors-in-title and assigns (except as limited below; if applicable), when due, whether by acceleration or otherwise, with all interest as may accrue thereon, either before or after maturity or the occurrence of a default or Event of Default thereof, together with all amendments, modifications, extensions, renewals, consolidations, refinancing, and restructures thereof, and all documents and other instruments now or hereafter, evidencing, securing, or otherwise relating to any such debts and obligations, whether arising by note, loan documents, account, credit card, indemnity, contract, tort, guaranty, overdraft, or otherwise; whether direct or indirect, absolute or contingent; whether arising from an original obligation of Borrower to Lender or from Lender's purchase of an obligation of Borrower; whether such debts or obligations are from time to time increased, reduced, or entirely extinguished or reincurred; whether or not the advances or events creating such debts or other obligations are presently foreseen or are incurred with or without notice to Guarantor; regardless of the class of the debts or other obligations, be they otherwise secured or unsecured or arising from commercial or consumer transactions; and all costs, expenses, costs of recording and fees (including reasonable and actual attorneys' fees) paid or incurred by Lender, in endeavoring to collect the Obligations, or to enforce, protect, or defend the Obligations, or any portion thereof, or to enforce, protect, or defend the perfection, validity, priority or enforceability of any mortgage, pledge, assignment, security interest, or Lien securing the Obligations, or to enforce, protect, or defend any collateral or realize upon any collateral securing the Obligations or to protect, defend, or enforce this Guaranty.

2.      **Definition of Loan.** As used in this Guaranty, the term "**_Loan_**" shall collectively mean:

a.      That certain Loan Agreement, dated January of even date herewith, 2022, between Borrower and Lender (the "**_Loan Agreement_**")

b.      That certain Promissory Note (Term Loan), dated January of even date herewith, 2022, in the original principal amount of Four Million Nine Hundred Thousand and No/100 Dollars ($4,900,000.00) (the "**_Term Note_**");

c.      Together with all renewals, extensions, modifications, amendments, consolidations, refinancing, and restructures thereof; and

d.      All mortgages, assignments, pledges, security agreements, instruments, and other documents now or hereafter executed and delivered to Lender evidencing, securing, or otherwise relating to any of the above (The Term Note, Loan Agreement(s), and all other documents new or hereafter executed

1

or delivered to Lender evidencing, securing, or otherwise relating to the Loan are collectively "***Loan Documents***").

      3.      **Continuing, Unconditional and Absolute Guaranty.** Guarantor hereby guarantees to Lender the full and timely payment and performance of the Obligations and agrees that Guarantor's guarantee of the Obligations is continuing, absolute and unconditional. The validity of this Guaranty shall not be impaired by any event whatsoever, including, but not limited to, the merger, consolidation, cessation of business, winding up or liquidation of Borrower; the financial decline, receivership or bankruptcy of Borrower; the failure of any other party to guarantee the Obligations or to assume liability for the Obligations or to provide collateral therefore; Lender's failure to give Guarantor any notice including notice of default by Borrower; the unenforceability of any of the Obligations against Borrower or any other person or entity or against any collateral for any reason; Lender's failure to file suit against Borrower (regardless of whether Borrower is or is becoming insolvent, is believed to be about to leave the state or any other circumstance); the occurrence of an Event of Default and Lender's waiver or Lender's failure to act as a result of such default; assumption of the loan by any person or entity with or without release of Borrower or any endorser or guarantor; Lender's declaration of default, acceleration or reinstatement of any or all of any Obligation at any time or times; Lender's failure to renew or extend any or all of the Obligations as they become due (by acceleration or otherwise); or the termination of any relationship of Guarantor with Borrower, including, but not limited to, any relationship of employment, ownership, or commerce, or any other personal, business, or professional relationship. The Loan and any other Obligations shall be deemed made in reliance upon the continued operation of this Guaranty and shall constitute additional consideration for Guarantor's execution of this Guaranty. Guarantor agrees that this Guaranty shall be valid and binding upon Guarantor upon the delivery of this executed Guaranty to Lender by any party whomsoever.

      4.      **Irrevocable Guaranty.** Guarantor's guarantee of the Obligations is irrevocable; provided, however, Guarantor may at any time by written notice to Lender prospectively terminate Guarantor's liability hereunder for Obligations, first incurred after Lender's receipt of the written notice, subject to the limitations set forth in this paragraph. After the delivery of any notice of termination to Lender, Guarantor shall remain fully liable for all principal, interest and expenses, including attorneys' fees for all Obligations existing as of the time of Lender's receipt of the termination notice; for all interest subsequently accruing thereon on such existing Obligations until paid in full; and for all expenses including attorneys' fees, subsequently incurred by Lender with respect to such existing Obligations until paid in full; for all subsequent principal advances on existing Obligations that Lender may advance during the remaining term of such existing obligations, regardless of whether Lender waives any default or Event of Default, condition of lending, or any other condition precedent in actually making any of the advance(s), together with all interest thereon and expenses related thereto; and for any amounts applied to any of the foregoing that are challenged as avoidable transfers as further provided in the applicable paragraph below. In order to effectuate any attempted termination Guarantor must pay to Lender all amounts owing on the existing obligations, including pay in full the Loan. Guarantor acknowledges that it is critically important to Borrower to obtain the commitment for the Loan and that Lender would not make the commitment for the Loan without this Guaranty.

      5.      **Primary Liability of Guarantor**. This Guaranty constitutes a guarantee of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any co-borrower, endorser, Guarantor or other entity or person, nor against any mortgage, assignment, pledge, security interest, or Lien available to Lender nor against any collateral. Guarantor waives any right to require an action to be brought against Borrower or any co-borrower, endorser, Guarantor, or other entity or person or to require that resort be had to any mortgage, assignment, pledge, security interest, or Lien or against any collateral, or to any balance of any deposit account, or credit on the books of Lender in favor of Borrower or any other person. Accordingly, Lender may enforce this Guaranty against Guarantor for any amounts due under the Loan or any Obligation as they become due (by acceleration or otherwise) whether or not a default exists thereunder

and without first making demand or instituting collection proceedings against Borrower. Guarantor's liability for the Obligations is primary, and not secondary, and each document presently or hereafter executed by Borrower to evidence or secure an Obligation to Lender is incorporated herein by reference and shall be fully enforceable against Guarantor. If Lender holds one (1) or more guaranties of Guarantor, and receives this Guaranty and/or hereinafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative unless specifically provided to the contrary. This Guaranty shall not (unless specifically provided to the contrary) affect or invalidate any prior or subsequent guaranties of Guarantor. Guarantor's liability to Lender will be Guarantor's aggregate liability under the terms of this Guaranty and under the terms of any other guaranty or guaranties.

6.      **No Marshaling Assets**. Lender may, in Lender's sole and absolute discretion, proceed against any collateral securing the Obligations and against parties liable therefore in such order as Lender may elect, and Guarantor shall not be entitled to require Lender to marshal assets. The benefit of any rule of law or equity to the contrary is hereby expressly waived by Guarantor.

7.      **Impairment of Collateral; Release of Liable Parties.** Lender may, in its sole and absolute discretion, with or without notice to or consent from Guarantor, and with or without consideration, take or fail to take or delay taking any action of any type whatsoever; release, surrender, or substitute any collateral securing the Obligations; grant extensions, indulgences, compromises, or forbearance; release, compromise or settle with any party; waive any default or Event of Default; or fail to take any action upon the occurrence of default, an Event of Default, or upon maturity. No action which Lender shall take or fail to take in connection with the Obligations or with any loan documents evidencing the Obligations, or any of them, or any mortgage, assignment, pledge, security interest, or Lien for the payment of the Obligations, or for the performance of any Obligations or undertakings of Borrower or any co-borrower, endorser, Guarantor, or any other person or entity, nor any course of dealing with Borrower or any other person or entity, shall release, limit, reduce or waive Guarantors Obligations hereunder, effect this Guaranty in any way, or afford Guarantor any recourse, defense, or right of set-off against Lender. The defenses of impairment of collateral and impairment of recourse and any requirement of diligence on Lender's part in collecting the Obligations are hereby expressly waived by Guarantor.

8.      **Amendment of Obligations.** Lender may, without notice to or the joinder of Guarantor, modify, extend, accelerate, reinstate, refinance, consolidate, restructure, or renew the Obligations (with or without the execution of new promissory notes or loan documents) and grant any consent or indulgence with respect hereto.

9.      **Waiver.** Guarantor hereby waives (a) any requirement of presentment, protest, notice of dishonor, notice of default, notice of acceptance, notice of acceleration, demand, and all other actions or notices that may otherwise be required on Lender's part in connection with the Obligations; (b) all defenses of suretyship; and (c) all rights of suretyship against Lender including, but not limited to, any right to cause Lender to initiate legal proceedings against Borrower or any other person or entity.

10.     **Subordination; Subrogation.** Guarantor agrees that any loan made by Guarantor to Borrower and any other obligations or debts of Borrower to Guarantor shall be subordinate to the Obligations as to both payment and collection. Accordingly, except for dividends that may be paid in the ordinary course of business as provided in the Loan Agreement, Guarantor agrees not to accept any payment whatsoever from Borrower or to allow any payment by Borrower for or to Guarantor or for Guarantor's benefit without Lender's prior written consent until all Obligations have been paid in full and this Guaranty has been paid or terminated. Guarantor hereby grants Lender a security interest in all accounts now or hereafter owed guarantor by Borrower and in all existing and future instruments, chattel paper and other property constituting obligations of Borrower to Guarantor. Lender may file this Guaranty (or a copy hereof) as a financing statement with respect thereto or Lender may require Guarantor to execute a separate financing

3

statement with respect thereto or require Guarantor to take other action necessary to perfect Lender's interest therein, at Guarantor's expense. Without limiting the foregoing, all such property in which a security interest may be perfected by possession shall be delivered to Lender immediately as made available to Guarantor and, until so delivered, shall be held in trust by Guarantor for Lender. Guarantor agrees that in the event of a bankruptcy or other insolvency proceedings involving Borrower, if Lender so directs, Guarantor will timely file a claim for the amount of the subordinated debt, in form approved by Lender. Guarantor agrees to pursue said claim with diligence and to comply with any lawful instructions from Lender pertaining to the pursuit of the claim. The proceeds of any such claim shall be delivered to Lender. Guarantor shall not be subrogated to any rights of Lender against Borrower or any property or other party until the Obligations have been paid in full and terminated in writing by Lender.

11. **Application of Funds.** Lender may, in Lender's sole and absolute discretion, apply amounts received for Borrower's account first to pay any obligation or indebtedness of Borrower to Lender including any obligation or indebtedness that is not guaranteed by Guarantor, if any, before reducing the Obligations. Without notice to or consent of Guarantor, Lender may apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as Lender in its sole judgment shall see fit to the Obligations which are subject to this Guaranty.

12. **Statute of Limitation.** Guarantor acknowledges that the statute of limitation applicable to this Guaranty shall begin to run only upon Lender's accrual of a cause of action against Guarantor caused by Guarantor's failure to honor a demand for performance hereunder made by Lender in writing; provided, however, if, subsequent to the demand upon Guarantor, Lender reaches an agreement with Borrower or Guarantor on any terms causing Lender to forbear in the enforcement of its demand upon Guarantor, the statute of limitation shall be reinstated and shall run for its full duration from such time that Lender subsequently makes demand upon Guarantor.

13. **Death of Guarantor.** In the event of the death of Guarantor, the obligations of Guarantor hereunder shall immediately become due and payable without demand; provided, however, the same shall not be a default or be accelerated so long as the estate of Guarantor signs or affirms this Guaranty, and Borrower and Lender, cooperating in good faith, find a guarantor with equivalent net worth to Guarantor or who is otherwise suitable to Lender in its sole but reasonable discretion to replace Guarantor and his estate.

14. **Cancellation; Survival of Certain Obligations.** Lender may evidence its cancellation and termination of this Guaranty and the release of Guarantor from liability hereunder by delivering to Guarantor an instrument of release, or by delivering this Guaranty to Guarantor marked cancelled or terminated, or both. Notwithstanding the foregoing or anything to the contrary in this Guaranty, this Guaranty shall cancel and terminate automatically, and shall no longer be of force or effect, on the date on which all principal, accrued interest and expenses due under the Term Note are paid in full. The purported cancellation, termination and release of Guarantor pursuant to this Section 14 shall not impair Guarantor's continuing liability for (a) any amount of principal, accrued interest and expenses that was mistakenly omitted by Lender in calculating the amount of the Obligations; (b) liability for avoided payments and expenses related thereto (as provided in detail below); and (c) any erroneous release hereof by Lender or any officer(s) of Lender.

15. **Waiver of Claim Against Borrower.** Guarantor shall have no claim (as such as defined in 11 U.S.C. § 101) against Borrower of any payment or grant of security by Guarantor hereunder or in connection herewith, unless Guarantor's possession of such claim would in no circumstance render a payment or grant of security, hypothetical or otherwise, by Borrower to Lender, subject to avoidance, turnover, or nullification in any regard.

16. **Recovery of Avoided Payments.** If any payments or proceeds of collection applied by Lender to the Obligations should be challenged by a bankruptcy trustee, debtor-in-possession, creditor or other party as an avoidable transfer on the grounds that the payment constituted a preferential payment or a fraudulent conveyance under state law, federal law, or the Bankruptcy Code or any successor or similar statute thereto or on any other grounds, Lender may, as its option and in its sole discretion, elect whether to contest such challenge. If Lender contests the avoidance action, all costs of the proceedings, including Lender's reasonable and actual attorneys' fees, will become part of the Obligations. If the contested amount, or any part thereof, is successfully avoided, the avoided amount will become part of the Obligations hereunder. If Lender elects not to contest the avoidance action, Lender may tender the amount subject to the avoidance action to the court, bankruptcy trustee, debtor-in-possession, creditor, or other party and the amount so tendered shall become part of the Obligations hereunder. Guarantor's obligation to reimburse Lender for amounts due under this paragraph shall survive the purported cancellation hereof.

17. **Financial Statement.** Guarantor covenants and agrees that from the date hereof and the earlier of the payment in full of the Obligations or the cancellation of this Guaranty, Guarantor shall furnish to Lender the financial statements required hereunder in form reasonably acceptable to Lender and upon request of Lender, shall furnish, prepare, and deliver or cause to be furnished, prepared and delivered to Lender within a reasonable period of time, such additional information and financial statements as Lender may from time to time reasonably request. In addition, within thirty (30) days after filing, Guarantor shall deliver to Lender, without demand, a copy of Guarantor's Federal Income Tax Return and any gift tax returns, all signed by Guarantor. Guarantor warrants that Guarantor's financial statements, all financial information and tax returns delivered to Lender in connection with the Obligations are true, accurate and complete in every material respect, and disclose all direct and contingent liabilities. Guarantor warrants that no material adverse change has occurred in Guarantor's financial condition as set forth in such financial statements.

18. **Solvency of Guarantor.** Guarantor warrants to Lender that Guarantor is not insolvent and that Guarantor's execution hereof does not render Guarantor insolvent.

19. **No Unpaid Taxes.** Guarantor warrants that Guarantor is not presently and shall not hereafter be delinquent in the payment of any taxes imposed by any governmental authority or in the filing of any tax return. Guarantor further warrants that Guarantor is not involved in a dispute with any taxing authority over tax amounts due.

20. **Security Interest; Setoff.** In order to further secure the payment of the Obligations, Guarantor hereby grants to Lender a security interest in and right of setoff against all of Guarantor's presently owned or hereafter acquired monies, items, credits, deposits and instruments (including certificates of deposit) presently or hereafter in the possession of Lender. Lender may exercise its rights of setoff without prior notice to Guarantor. Lender shall not be liable for the dishonor of any items that may result from Lender's exercise of any of its rights under this paragraph.

21. **Consent to Jurisdiction and Venue.** Guarantor hereby irrevocably consents to the jurisdiction of the United States District Court for the Middle District of Tennessee and of all Tennessee state courts sitting in Davidson County, Tennessee, for the purpose of any litigation to which Lender may be a party and which concerns this Guaranty or the Obligations. It is further agreed that venue for any such action shall lie exclusively with courts sitting in those federal and Tennessee jurisdictions named above, unless Lender agrees to the contrary in writing. Guarantor acknowledges that this paragraph is a material inducement to Lender in extending credit to Borrower and in accepting this Guaranty.

22. **Further Assurances, Etc.** Guarantor agrees to execute such additional documents as Lender may require to perfect or extend Lender's interest in any of Guarantor's property securing or intended to secure the Obligations.

5

23. **Expenses, Costs and Attorneys' Fees**. Guarantor agrees to pay to Lender all costs and expenses (including reasonable and actual attorneys' fees) paid or incurred by Lender in endeavoring to collect the Obligations or to enforce, protect, or defend the Obligations, or any portion thereof, or to enforce, protect, or defend the perfection, validity, priority, or enforceability of any mortgage assignment, pledge, security interest, or Lien, which secures the Obligations, or any portion thereof, or to enforce, collect, protect or defend the Loan or any Loan Documents, or to enforce, protect, or defend any collateral or to collect or realize against any collateral which secures the Obligations or to enforce, collect or defend this Guaranty.

24. **Notices.** Any communications concerning this Guaranty shall be addressed as follows:

If to Guarantor:          Timothy Morris
6001 HWY A1A: PMB# 8359
Vero Beach, FL 32963
Email:  tim@m2developmentpartners.com

With a copy to:         Miles & Stockbridge
1201 Pennsylvania Ave NW, Suite 900
Washington, DC 20004
Attention: Thomas Petty
Email: tpetty@MilesStockbridge.com

If to Lender:           Oakworth Capital Bank
5511 Virginia Way, Suite 110
Brentwood, Tennessee 37027
Attention: Michael Boon

With a Copy to:         Burr & Forman LLP
222 Second Avenue South, Suite 2000
Nashville, Tennessee 37201
Attention: C. Tucker Herndon

25. **No Usury.** If from any circumstances whatsoever, fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or other applicable law, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity so that in no event shall any extraction be possible under the Guaranty that is excess of the limit of such validity, but such obligation shall be fulfilled to the maximum limit to such validity. The provisions of this paragraph shall control every other provision in this Guaranty.

26. **Assignment.** This Guaranty shall be binding upon the heirs, successors and assigns of Guarantor and Lender, except that Guarantor shall not assign any rights or delegate any obligations arising hereunder without prior written consent of Lender. Any attempted assignment or delegation by Guarantor without the required prior written consent of Lender shall be void.

27. **Entire Agreement; No Oral Representations Limiting Enforcement, Loan Agreement, Etc.** This Guaranty represents the entire agreement between the parties concerning the liability of Guarantor for the Obligations, and any oral statements regarding Guarantor's liability for the Obligation are merged herein. **Guarantor understands that Lender intends to rely upon and to enforce this Guaranty and that Guarantor must not rely upon or believe to be authorized or lawful any statement or representation to the contrary. Lender hereby disavows any such statement or representation by any person. Without limiting the foregoing, Guarantor acknowledges Lender's**

6

intention to enforce this Guaranty in accordance with its terms and to the fullest extent possible and Guarantor acknowledges that Lender has made no oral statements to Guarantor that could be construed as a waiver of Lender's right to enforce this Guaranty in accordance with its terms by all available legal means.

28. **Applicable Law.** This Guaranty is negotiated, executed, and delivered in the State of Tennessee, and this Guaranty is to be performed in the State of Tennessee. The validity, construction and enforcement of this Guaranty and all other documents executed with respect to the Obligations shall be determined according to the substantive law of Tennessee applicable to contracts executed, delivered, and performed in that state. The provisions hereof are subject to all applicable state and federal laws to the extent they are not effectively waived herein, and shall be read as to comply therewith.

29. **General Provisions.** Lender's indulgence or failure to act upon the existence of a default or event of default in any Obligations or this Guaranty or any other course of dealing or departure from the terms of this Guaranty or any Obligations shall not prejudice Lender's rights to make demand and recover from Guarantor in accordance with the terms hereof. The remedies provided Lender in this Guaranty are not exclusive of any other remedies that may be available to Lender under any other document or at law or in equity. No provision of this Guaranty can be amended or waived, except by a statement in writing signed by the party against which enforcement of the amendment or waiver is sought. Should any provision of this Guaranty be invalid or unenforceable for any reason, the remaining provisions hereof shall remain in full effect. Words used herein indicating gender or number shall be read as context may require.

30. **Captions Not Controlling**. Captions and headings have been included in this Guaranty for the convenience of the parties, and shall not be construed as affecting the content of the respective paragraphs.

GUARANTOR HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY LITIGATION, ACTION OR OTHER PROCEEDING (A) LENDER BRINGS TO ENFORCE OR COLLECT THE OBLIGATIONS OF THIS GUARANTY; (B) ALLEGING THAT LENDER HAS BREACHED ANY DUTY, OBLIGATION OR AGREEMENT, EXPRESS OR IMPLIED, RELATING TO THE OBLIGATIONS OF THIS GUARANTY; (C) ALLEGING THAT LENDER, OR ANY OF ITS OFFICERS, EMPLOYEES, REPRESENTATIVES, ATTORNEYS OR AGENTS HAVE ACTED WRONGFULLY, NEGLIGENTLY OR TORTUOUSLY WITH RESPECT TO THE OBLIGATIONS OF ANY BORROWER, ENDORSER OR GUARANTOR; OR (D) BETWEEN THE PARTIES THIS WAIVER OF JURY TRIAL DOES NOT WAIVE GUARANTOR'S OR LENDER'S RIGHT TO BRING A LAW SUIT THAT A JUDGE, WITHOUT A JURY, WOULD DECIDE. IN ADDITION, GUARANTOR ACKNOWLEDGES A THOROUGH UNDERSTANDING OF THE TERMS OF THIS GUARANTY AND AGREES TO BE BOUND THEREBY.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

7

This Guaranty is executed and delivered to Lender to be effective as of the date first above written.

**WITNESS**:                                                                                  **GUARANTOR**:

Name: *Brendan Donnelly*                                        _____

                                                                         **TIMOTHY MORRIS**, individually

STATE OF *Florida* _____ )
COUNTY OF *Indian River* _____ )

        Before me, the undersigned Notary Public, personally appeared Timothy Morris with whom I am personally acquainted with (or proved to me on the basis of satisfactory evidence), and who upon oath, executed the foregoing instrument for the purposes therein by signing his name as the within named bargainor.

        Witness my hand this *22* day of January, 2022.

                                                                         _____
                                                                         NOTARY PUBLIC

My Commission Expires: *August 20, 2025*

ELIZABETH INGRAM
Notary Public · State of Florida
Commission # HH 156666
My Comm. Expires Aug 20, 2025
Bonded through National Notary Assn.

*Signature Page to Guaranty*

# REAFFIRMATION OF CONTINUING GUARANTY

**THIS REAFFIRMATION OF CONTINUING GUARANTY** ("*Reaffirmation*") is executed as of the 26th day of May, 2022, by **TIMOTHY MORRIS**, a resident of the State of Florida (the "*Guarantor*"), in favor of **OAKWORTH CAPITAL BANK**, an Alabama banking corporation (the "*Lender*"), an Alabama state banking corporation with its principal offices located at 5511 Virginia Way, Suite 110, Brentwood, Tennessee 37027, in order to induce the Lender to extend credit to **6101 SLIGO, LLC**, a Delaware limited liability company (the "*Borrower*").

## RECITALS:

A.      Borrower and Lender entered into that certain Loan Agreement, dated January 31, 2022 (the "*Agreement*"; capitalized terms used but not otherwise defined herein have the same meanings as in the Agreement), pursuant to which Lender has made a term loan to Borrower in the original principal amount of $4,900,000.00 (the "*Loan*"); and

B.      Guarantor executed in favor of the Lender that certain Continuing Guaranty dated January 31, 2022, guaranteeing the prompt and punctual payment of the Loan (collectively, the "*Guaranty*"); and

C.      Borrower and Guarantor have requested that Lender extend, renew, modify and amend the Loan to, among other things, increase the original principal amount of the Loan to $5,300,000.00, to be evidenced by that certain Amended and Restated Loan Agreement and that certain Amended and Restated Promissory Note executed simultaneously herewith (the "*Modified Loan*"), and

D.      Lender has agreed to extend, renew, modify and amend the Modified Loan upon certain conditions, one of which is the execution of this Reaffirmation by the Guarantor.

## AGREEMENT:

**NOW, THEREFORE**, in consideration of the above Recitals and the agreement of Lender to modify, amend, extend and restate the Loan, Guarantor acknowledges and confirms to Lender that the Guaranty is and remains in full force and effect in accordance with its terms, that Guarantor's obligations include the Modified Loan in the maximum principal amount of $5,300,000.00 and the Guaranty remains a valid, enforceable and binding obligation of the Guarantor. Guarantor further acknowledges and agrees that Lender is relying on this Reaffirmation as an inducement to modify, amend, extend and restate the Modified Loan, that there are no offsets or defenses to payment and performance of the obligations of the Guarantor evidenced by the Guaranty, that all representations and warranties made in the Guaranty remain true and correct in all material respects as of the date above, and that Guarantor has not terminated, reduced, limited, or modified the Guaranty in any respect other than the increase of the total outstanding liability relating to such Guaranty.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

47885976 v2.doc

**IN WITNESS WHEREOF**, Guarantor has executed and delivered this Reaffirmation as of the date first written above.

**WITNESS:**                                                    **GUARANTOR:**

Name: Kevin Alexander                          **TIMOTHY MORRIS,** individually

STATE OF Tennessee       )
COUNTY OF Cheatham       )

Before me, the undersigned Notary Public, personally appeared Timothy Morris with whom I am personally acquainted with (or proved to me on the basis of satisfactory evidence), and who upon oath, executed the foregoing instrument for the purposes therein by signing his name as the within named bargainor.

Witness my hand this 26th day of May, 2022.

NOTARY PUBLIC

My Commission Expires: 3/8/25

*[Notary Seal: KEVIN ROONEY, STATE OF TENNESSEE NOTARY PUBLIC, CHEATHAM COUNTY, MY COMMISSION EXPIRES 3-8-2025]*

*Signature Page to Reaffirmation of Continuing Guaranty*

47885976 v2.doc

# REAFFIRMATION OF CONTINUING GUARANTY

**THIS REAFFIRMATION OF CONTINUING GUARANTY** ("*Reaffirmation*") is executed as of the 16th day of March, 2023, by **TIMOTHY MORRIS**, a resident of the State of Florida (the "*Guarantor*"), in favor of **OAKWORTH CAPITAL BANK**, an Alabama banking corporation (the "*Lender*"), an Alabama state banking corporation with its principal offices located at 5511 Virginia Way, Suite 110, Brentwood, Tennessee 37027, in order to induce the Lender to extend credit to **6101 SLIGO, LLC**, a Delaware limited liability company (the "*Borrower*").

## RECITALS:

A.      Borrower and Lender entered into that certain Loan Agreement, dated January 31, 2022, as amended by that certain Amended and Restated Loan Agreement, dated May 26, 2022 (the "*Agreement*"; capitalized terms used but not otherwise defined herein have the same meanings as in the Agreement), pursuant to which Lender has made a term loan to Borrower in the original principal amount of $5,300,000.00 (the "*Loan*"); and

B.      Guarantor executed in favor of the Lender that certain Continuing Guaranty dated January 31, 2022, guaranteeing the prompt and punctual payment of the Loan (collectively, the "*Guaranty*"); and

C.      Borrower and Guarantor have requested that Lender extend, renew, modify and amend the Loan to, among other things, increase the original principal amount of the Loan to $5,300,000.00, to be evidenced by that certain Second Amended and Restated Loan Agreement and that certain Second Amended and Restated Promissory Note executed simultaneously herewith (the "*Modified Loan*"), and

D.      Lender has agreed to extend, renew, modify and amend the Modified Loan upon certain conditions, one of which is the execution of this Reaffirmation by the Guarantor.

## AGREEMENT:

**NOW, THEREFORE**, in consideration of the above Recitals and the agreement of Lender to modify, amend, extend and restate the Loan, Guarantor acknowledges and confirms to Lender that the Guaranty is and remains in full force and effect in accordance with its terms, that Guarantor's obligations include the Modified Loan in the maximum principal amount of $5,300,000.00 and the Guaranty remains a valid, enforceable and binding obligation of the Guarantor.  Guarantor further acknowledges and agrees that Lender is relying on this Reaffirmation as an inducement to modify, amend, extend and restate the Modified Loan, that there are no offsets or defenses to payment and performance of the obligations of the Guarantor evidenced by the Guaranty, that all representations and warranties made in the Guaranty remain true and correct in all material respects as of the date above, and that Guarantor has not terminated, reduced, limited, or modified the Guaranty in any respect other than the increase of the total outstanding liability relating to such Guaranty.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

**IN WITNESS WHEREOF**, Guarantor has executed and delivered this Reaffirmation as of the date first written above.

**WITNESS**:                                      **GUARANTOR**:

_____          _____
Name: _____                **TIMOTHY MORRIS,** individually

STATE OF _____          )

COUNTY OF_____          )

     Before me, the undersigned Notary Public, personally appeared Timothy Morris with whom I am personally acquainted with (or proved to me on the basis of satisfactory evidence), and who upon oath, executed the foregoing instrument for the purposes therein by signing his name as the within named bargainor.

Witness my hand this 16th day of March, 2023.

_____
NOTARY PUBLIC

My Commission Expires:

# citrix | RightSignature

REFERENCE NUMBER
56670D1F-9245-4343-8666-43C70F73E5FD

## SIGNATURE CERTIFICATE

### TRANSACTION DETAILS

**Reference Number**
56670D1F-9245-4343-8666-43C70F73E5FD

**Transaction Type**
Signature Request

**Sent At**
03/23/2023 14:01 CDT

**Executed At**
03/23/2023 14:51 CDT

**Identity Method**
email

**Distribution Method**
email

**Signed Checksum**
3cacd7e81a9487ea7af94bc6ea7677080e3f6206e88504251c91543846143057

**Signer Sequencing**
Disabled

**Document Passcode**
Disabled

### DOCUMENT DETAILS

**Document Name**
Oakwork Capital Bank 6101 Sligo--Amendment Documents

**Filename**
oakwork_capital_bank_6101_sligo--amendment_documents.pdf

**Pages**
53 pages

**Content Type**
application/pdf

**File Size**
1.94 MB

**Original Checksum**
1ef25f56786970afaafcd3b43510f798952e736e5c8ba48e0c81eb42f9a70473

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>Kaytlin Stroinski<br><br>**Email**<br>kaytlin.stroinski@oakworth.com<br><br>**Components**<br>1 | **Status**<br>signed<br><br>**Multi-factor Digital Fingerprint Checksum**<br>f89bd12e4c0b6e2e7bf788c90dcf305e5290bacdfaea6e110887ad8667bd4d77<br><br>**IP Address**<br>174.236.33.133<br><br>**Device**<br>Mobile Safari via iOS<br><br>**Drawn Signature**<br><br>**Signature Reference ID**<br>02509F30<br><br>**Signature Biometric Count**<br>5 | **Viewed At**<br>03/23/2023 14:51 CDT<br><br>**Identity Authenticated At**<br>03/23/2023 14:51 CDT<br><br>**Signed At**<br>03/23/2023 14:51 CDT |
| **Name**<br>Timothy J. Morris<br><br>**Email**<br>tim@m2developmentpartners.com<br><br>**Components**<br>13 | **Status**<br>signed<br><br>**Multi-factor Digital Fingerprint Checksum**<br>2a43c831032bc3c9e3cd3c0e0c903473deac4af2ec38850199180a89195f3051<br><br>**IP Address**<br>69.137.160.205<br><br>**Device**<br>Microsoft Edge via iOS<br><br>**Drawn Signature**<br><br>**Signature Reference ID**<br>81B35C35<br><br>**Signature Biometric Count**<br>1 | **Viewed At**<br>03/23/2023 14:41 CDT<br><br>**Identity Authenticated At**<br>03/23/2023 14:41 CDT<br><br>**Signed At**<br>03/23/2023 14:41 CDT |
| **Name**<br>Scott Woolsey | **Status**<br>signed | **Viewed At**<br>03/23/2023 14:37 CDT |

# REAFFIRMATION OF CONTINUING GUARANTY

**THIS REAFFIRMATION OF CONTINUING GUARANTY** ("*Reaffirmation*") is dated and effective as of the 1st day of May, 2023, by **TIMOTHY MORRIS**, a resident of the State of Florida (the "*Guarantor*"), in favor of **OAKWORTH CAPITAL BANK**, an Alabama banking corporation (the "*Lender*"), an Alabama state banking corporation with its principal offices located at 5511 Virginia Way, Suite 110, Brentwood, Tennessee 37027, in order to induce the Lender to extend credit to **6101 SLIGO, LLC**, a Delaware limited liability company (the "*Borrower*").

## RECITALS:

A.      Borrower and Lender entered into that certain Loan Agreement, dated January 31, 2022, as amended by that certain Amended and Restated Loan Agreement, dated May 26, 2022, as further amended by that certain Second Amended and Restated Loan Agreement, dated March 16, 2023 (the "*Agreement*"; capitalized terms used but not otherwise defined herein have the same meanings as in the Agreement), pursuant to which Lender has made a term loan to Borrower in the original principal amount of $5,300,000.00 (the "*Loan*"); and

B.      Guarantor executed in favor of the Lender that certain Continuing Guaranty dated January 31, 2022, guaranteeing the prompt and punctual payment of the Loan (collectively, the "*Guaranty*"); and

C.      Borrower and Guarantor have requested that Lender extend, renew, modify and amend the Loan to, among other things, extend the Maturity Date of the Loan to August 9, 2023, to be evidenced by that certain Third Amended and Restated Loan Agreement and that certain Third Amended and Restated Promissory Note executed simultaneously herewith (the "*Modified Loan*"), and

D.      Lender has agreed to extend, renew, modify and amend the Modified Loan upon certain conditions, one of which is the execution of this Reaffirmation by the Guarantor.

## AGREEMENT:

**NOW, THEREFORE**, in consideration of the above Recitals and the agreement of Lender to modify, amend, extend and restate the Loan, Guarantor acknowledges and confirms to Lender that the Guaranty is and remains in full force and effect in accordance with its terms, that Guarantor's obligations include the Modified Loan in the maximum principal amount of $5,300,000.00 and the Guaranty remains a valid, enforceable and binding obligation of the Guarantor. Guarantor further acknowledges and agrees that Lender is relying on this Reaffirmation as an inducement to modify, amend, extend and restate the Modified Loan, that there are no offsets or defenses to payment and performance of the obligations of the Guarantor evidenced by the Guaranty, that all representations and warranties made in the Guaranty remain true and correct in all material respects as of the date above, and that Guarantor has not terminated, reduced, limited, or modified the Guaranty in any respect other than the increase of the total outstanding liability relating to such Guaranty.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

IN WITNESS WHEREOF, Guarantor has executed and delivered this Reaffirmation as of the date first written above.

WITNESS:

GUARANTOR:

Name: _____

TIMOTHY MORRIS, individually

STATE OF _TENNESSEE_ )

COUNTY OF _DAVIDSON_ )

Before me, the undersigned Notary Public, personally appeared Timothy Morris with whom I am personally acquainted with (or proved to me on the basis of satisfactory evidence), and who upon oath, executed the foregoing instrument for the purposes therein by signing his name as the within named bargainor.

Witness my hand this _29_ day of June, 2023.

ELLEN K SEVIER
STATE OF TENNESSEE
NOTARY PUBLIC
DAVIDSON COUNTY

NOTARY PUBLIC

My Commission Expires: 11/3/25

*Signature Page to Reaffirmation of Continuing Guaranty*

50959957 v1.doc

12/08/2023

6101 Sligo, LLC
6001 Highway A1A PMB 8359
Vero Beach FL 32963-1014

Re: Loan  901078600          6101 Sligo, LLC                              901078600
                             6101 FREM - 6101 Sligo Mill Road NE

                             Washington DC 20011

Dear 6101 Sligo, LLC

This estimated payoff loan letter reflects your unpaid principal
balance, interest due and any outstanding fees, (i.e. priority
statement fee, late charge, escrow advances and attorney fees)
through the date of 12/08/2023.

| | |
|---|---:|
| Principal | 5,334,821.62 |
| Interest | 323,496.30 |
| Fees | .00 |
| Late Charges | 1,999.98 |
| Escrow | .00 |
| Rebates | .00 |
| Net Payoff | 5,660,317.90 |
| Per Diem | 2,556.268692916 |

If you decide not to payoff your loan by the payoff date,
interest will continue to accrue in accordance with your loan
contract and/or disclosures, in addition to the assessment of
any other applicable fees and/or charges. The estimated payoff
loan amount in this letter may actually vary from your final
payoff amount owed on this loan due to posted transactions
made on this loan account after the date of this letter.

Please submit your payoff funds to Oakworth Capital Bank, Loan
Servicing Department, 850 Shades Creek Parkway, Birmingham, AL
35209. Oakworth Capital Bank remains committed to providing our
customers with the best banking solutions in the industry. If
you have any questions or need any further assistance, please
do not hesitate to contact me.

_____

Loan Servicing